STATE of Wisconsin, Plaintiff-Appellant,

v.

Eugene P. GREENWOLD, Defendant-Respondent. †

Court of Appeals

*No. 94–1396–CR. Submitted on briefs October 3, 1994.—Decided November 1, 1994.*

(Also reported in 525 N.W.2d 294.)

†Petition to review denied.

For the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Barbara L. Oswald,* assistant attorney general.

For the defendant-respondent, the cause was submitted on the briefs of *Mary E. Waitrovich*, assistant state public defender.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   The State appeals an order dismissing charges against Eugene Greenwold of homicide by intoxicated use of a motor vehicle and homicide by operation of a motor vehicle with a blood alcohol level of .1% or more in violation of § 940.09(1), STATS. The trial court found that the officers investigating the homicide charges acted in bad faith by not preserving evidence and thus violated Greenwold's due process rights. The State contends that the trial court applied the *Arizona v. Youngblood,* 488 U.S. 51 (1988), standard improperly by concluding that the officers' negligence constituted bad faith and therefore was a violation of Greenwold's due process rights. We agree that negligence is inadequate for a showing of bad faith and therefore reverse the trial court's ruling on the motion to dismiss.

63

## BACKGROUND

The incident in question involved a one car, rollover accident on Highway N in the Town of Preston, Trempealeau County. An officer who arrived at the scene briefly spoke with the owner of the car, Julie Murray, who gave conflicting testimony as to whether she or Greenwold was the driver. Also, an officer spoke with Greenwold, who said he was not driving the car and was not sure if Murray was driving the car. Murray died two days later from a head injury sustained in the accident.

While at the accident scene, the officers generally searched the area for markings and took some photographs. However, the officers did not examine the car for blood. Later, the vehicle was taken to an impound shed, which was neither heated nor air-conditioned and open to birds, rodents and other animals. Furthermore, the officers did not perform an extensive investigation until nine days after the accident. At that time, the officers noticed blood spots on various places in the interior of the vehicle, but they did not collect any evidence from the vehicle. There were other omissions in the investigation, including the officers' failing to take a photograph reflecting the entire accident scene.

Despite these oversights, the officers continued to investigate the accident and obtained a search warrant to take samples from the vehicle, which was still impounded. The officers collected several samples from the vehicle, including vinyl from the interior, molding from the driver's side door, human hair from the roof of the interior and a reddish brown substance from the dashboard by the steering wheel. These items were sealed in envelopes and placed in the evidence room of the sheriff's department. The police obtained another

64

search warrant to seize blood and hair samples from Greenwold, which were sent to the Wisconsin State Crime Laboratory for analysis.

The crime lab found that the samples did indicate human blood was present but, because the results were inconsistent, the particular blood type was unknown. The forensic scientist at the crime lab testified that age alone would not produce the inconsistent test results, but would produce negative results. She suggested that the fabric or temperatures could also be a cause of the inconsistent results. She did not reach a definite explanation for the inconclusive results.

Ultimately, Greenwold was charged with homicide by intoxicated use of a motor vehicle and homicide by operation of a motor vehicle with a blood alcohol concentration of .1% or above, in violation of § 940.09(1), STATS. The complaint alleged that Murray's father spoke to Greenwold after the accident at which time Greenwold admitted to being the driver of the vehicle. Before the jury trial commenced, Greenwold moved to dismiss the charges on the ground that the State failed to preserve relevant and exculpatory evidence and that this constituted a violation of his constitutional right to due process.

In support of his motion, Greenwold cited to the officers' failure to preserve the blood samples for proper analysis and to properly record the accident scene. The trial court based its decision on *State v. Hahn,* 132 Wis. 2d 351, 392 N.W.2d 464 (Ct. App. 1986), which was decided before *Youngblood.* The trial court found that the State violated Greenwold's due process rights and dismissed the charges with prejudice. The State appealed this order, and we held that the trial court failed to make a determination whether the officers acted in bad faith as required under *Youngblood. See*

65

*State v. Greenwold,* 181 Wis. 2d 881, 886, 512 N.W.2d 237, 239 (Ct. App. 1994). Thus, the case was remanded to the trial court for a determination of whether the investigating officers acted in bad faith under the *Youngblood* due process standard.

At the hearing on remand, the trial court took judicial notice of the prior proceedings and heard the testimony from several witnesses and arguments from counsel. Also on remand, Greenwold stipulated that the officers did not intentionally obstruct or tamper with evidence.[1] Based on a totality of the circumstances test, the trial court found that the officers negligently breached their duty to investigate, constituting bad faith. The State appeals this order of dismissal asserting that Greenwold did not meet his burden of proving the officers acted in bad faith because negligence does not constitute bad faith for the purpose of a due process violation. We agree and reverse the trial court's order.

## DISCUSSION

This issue involves the court's application of a constitutional standard to the conduct of the police officers in preserving evidence. Whether the trial court erred as a matter of law in applying the constitutional standard is a constitutional fact which we review de novo. *State v. Tarwid,* 147 Wis. 2d 95, 105, 433 N.W.2d 255, 259-60 (Ct. App. 1988). "The reviewing court has the duty to apply constitutional principles to the facts as

---

[1] Greenwold's attorney stated: "The defendant will stipulate that in no way or do we have any reason to believe that law enforcement in this or any other case intentionally obstructed or tampered with evidence or in any way committed misconduct in public office."

found in order to ensure that the scope of constitutional protections does not vary from case to case." *State v. Turner,* 136 Wis. 2d 333, 344, 401 N.W.2d 827, 832 (1987).

In order to rise to the level of a due process violation, evidence not preserved, lost or destroyed by the State "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 U.S. 479, 489 (1984). In *Trombetta,* the Court focused its analysis on the defendant's right to fundamental fairness by giving the defendant a chance to present a complete defense. *Id.* at 485. Unclear from the *Trombetta* holding was the role of a good faith analysis in the due process examination.

*Youngblood* addresses the good faith analysis and the materiality of the evidence, departing from the *Trombetta* holding. In *Youngblood,* the Court distinguished "potentially useful evidence" from "exculpatory evidence." *Id.* at 57-58. It held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. The Court reasoned that the State's bad faith is irrelevant when it fails to disclose exculpatory evidence. *Id.*

Thus, the due process analysis is two-pronged. A defendant's due process rights are violated if the police: (1) failed to preserve the evidence that is apparently exculpatory; or (2) acted in bad faith by failing to preserve evidence which is potentially exculpatory. *Id.* at

57-58; *see also Greenwold,* 181 Wis. 2d at 885-86, 512 N.W.2d at 239. Arriving at this standard, the Court balanced the defendant's interests in having access to significant evidence weighed against the unreasonableness of requiring the police to retain and preserve all evidence that might have significance. *Youngblood,* 488 U.S. at 58.

Under prong two, the bad faith analysis, the investigator's knowledge of the potentially useful or potentially exculpatory nature of the evidence is also relevant. *See id.* at 56 n.*. However, if the State fails to disclose or preserve materially exculpatory evidence, the defendant's due process rights are violated under the first prong of the test. *Id.* at 57. Although this logic may seem circular, the *Youngblood* analysis suggests that if the materiality of the evidence rises above being potentially useful to clearly exculpatory, a bad faith analysis need not be evoked; the defendant's due process rights are violated because of the apparently exculpatory nature of the evidence not preserved. In *Greenwold,* we concluded that the evidence was not apparently exculpatory, thus a bad faith analysis was in order. *Id.* at 885-86, 512 N.W.2d at 239.

After articulating the due process standard, the *Youngblood* Court failed to define or illustrate bad faith in the context of the State's failure to preserve potentially exculpatory evidence. The Court did, however, indicate what bad faith is not. *Id.* at 58. It is apparent from its analysis that there is no bad faith when the police negligently fail to preserve evidence which is merely potentially exculpatory. *Id.*

Federal cases following *Youngblood* interpret its holding as requiring official animus or a conscious

attempt to suppress exculpatory evidence for a showing of bad faith on the part of the government. *Jones v. McCaughtry,* 965 F.2d 473, 477 (7th Cir. 1992). Also, many federal courts support the proposition that negligence in preserving evidence is not a proper basis for a showing of bad faith. *See, e.g., United States v. Bohl,* 25 F.3d 904, 912 (10th Cir. 1994); *Holdren v. Legursky,* 16 F.3d 57, 60 (4th Cir. 1994) (police investigators' negligence does not indicate bad faith); *United States v. Femia,* 9 F.3d 990, 995 (1st Cir. 1993) (gross negligence in handing evidence did not constitute violation of due process); *Montgomery v. Greer,* 956 F.2d 677, 680-81 (7th Cir. 1992) (due process not violated when police negligently lost photographs used to identify defendant); *United States v. Sanders,* 954 F.2d 227, 231 (4th Cir. 1992) (inadvertent erasing of videotape does not constitute bad faith). Furthermore, failure to collect potentially exculpatory evidence is not a violation of due process rights. *Sadowski v. McCormick,* 785 F. Supp. 1417, 1421 (D. Mont. 1992), *aff'd,* 2 F.3d 1157 (9th Cir. 1993).

Thus, under *Youngblood* and the cases interpreting its standard, the second prong requiring bad faith can only be shown if: (1) the officers were aware of the potentially exculpatory value or usefulness of the evidence they failed to preserve; *and* (2) the officers acted with official animus or made a conscious effort to suppress exculpatory evidence. *See Sadowski,* 785 F. Supp. at 1422.

We conclude that Greenwold failed to meet this standard. First, Greenwold stipulated that the officers did not intentionally obstruct or tamper with evidence in this case. Furthermore, trial testimony indicates that the officers were not aware of the potentially

69

exculpatory value of the evidence when they failed to gather it, nor did they intentionally deprive anyone access to the evidence.

For example, one of the investigating officers testified that he saw nothing of interest in the car when it was impounded. He testified that the reason there was a delay for a search warrant for the car was that the investigation was focused in different directions. He further testified that he had no reason to suspect that there was evidence which would have been helpful to Greenwold. Another officer testified that he did not intend for the photographs to be inadequate and did not intentionally ignore noting the debris at the accident scene. He asserted that he attempted to measure the scene properly.

Additionally, Greenwold provided insufficient evidence to find that the officers' conduct caused the blood sample tests to be inconclusive. As the crime lab scientist testified, she would have gotten negative results, not inconclusive results, if the samples had been damaged by age or heat. Thus, there was insufficient evidence to show that the inconclusive results of the blood tests were caused by the officers' delay in testing the materials.

Accordingly, we conclude that Greenwold failed to meet his burden of proving bad faith. The officers were not aware of the potential exculpatory value of evidence that they failed to preserve. There is no evidence that the officers acted with animus or made a cognizant effort to suppress potentially exculpatory evidence either. Their inadvertence or carelessness in preserving the evidence does not rise to a level of animus or a conscience effort to suppress evidence. *See Sadowski,* 785 F. Supp. at 1422. The officers' negligent handling

of evidence in this case is not sufficient to constitute bad faith. Thus, according to the *Youngblood* standard, Greenwold's due process rights were not violated.

Finally, Greenwold argues that the due process clause of the Wisconsin Constitution affords greater protection than its counterpart in the United States Constitution. Greenwold contends that a growing number of jurisdictions have held the government to a higher due process of law standard under their state constitutions than the bad faith test in *Youngblood.* We disagree and conclude that this argument is unpersuasive.

First, it is well established that the due process clause of the Wisconsin Constitution is the substantial equivalent of its respective clause in the federal constitution. *State v. McManus,* 152 Wis. 2d 113, 130, 447 N.W.2d 654, 660 (1989). Second, we have already reasoned why the *Youngblood* test is the appropriate standard in the context of preservation of evidence and due process rights of criminal defendants in our earlier *Greenwold* decision. *See id.* at 885-86, 512 N.W.2d at 238-39. Thus, the argument that the due process clause of the Wisconsin Constitution affords greater protection is rejected.

Therefore, we reverse the trial court's order to dismiss the charges against Greenwold. The matter is remanded to the trial court for further proceedings.

*By the Court.*—Order reversed and cause remanded.