PER CURIAM.
¶1 Antorn Lamont Roby, Sr., appeals an order denying postconviction relief. Roby contends that his constitutional due process right to present a defense was violated when police destroyed field notes taken by separate investigating officers after a single report was created by the lead officer to avoid any inconsistencies between the separate reports. Roby contends that the notes of the investigating officers were potentially useful as impeachment evidence. Roby contends that the State's depriving Roby of the notes was a structural error requiring automatic reversal. Alternatively, he contends that, if the error was not structural, it was not harmless. Finally, Roby seeks a new trial in the interest of justice on the ground that the real controversy was not fully tried. For the reasons set forth below, we reject Roby's contentions and decline to order a new trial in the interest of justice. We affirm.
¶2 In April 2015, Roby was charged with delivering heroin. The charge arose from a controlled buy that law enforcement conducted on January 28, 2014, in which a confidential informant, S.W., purchased heroin from a seller whom S.W. knew by the nickname "Country," later identified as Roby. The controlled buy was conducted by multiple law enforcement officers who were part of a task force that included members of the FBI, the Beloit Police Department, and the Rock County Sheriff's Department.
¶3 After the controlled buy was completed, the lead police officer collected all the notes taken by the other law enforcement officers involved in the controlled buy and debriefed those officers. The lead officer created one written report for the investigation, and then destroyed the other officers' individual notes. The officer testified that it was standard procedure for the task force to produce only one report documenting an investigation regardless of how many officers were involved. The officer stated that the reason that only one report was created for each investigation was to ensure that what was written was consistent with what the other officers "may have [seen] or thought ...." The officer explained that: "That's why I talk to them, the other officers involved, to get what they said they observed, what they did, and I document it." He confirmed that the standard procedure of generating one report was so that there would be no discrepancy between his report and the other reports that otherwise would have been written. The officer stated: "Some officers tend to write what other people did without talking to them [based on assumptions about] what they did. This way it's one person who's handling the information and documenting it."
¶4 Roby was convicted and sentenced to prison in February 2016. In October 2017, Roby filed a postconviction motion for a new trial under WIS. STAT. § 974.06 (2015-16).[1] Roby argued that the lead officer's destruction of the notes of individual investigating officers for the purpose of eliminating inconsistencies violated Roby's due process right to present a defense. The circuit court held a motion hearing, and then denied Roby's motion. Roby appeals.
¶5 A defendant claiming that his or her due process rights were violated by the State's destruction of evidence must establish that: (1) the State failed to preserve evidence that is apparently exculpatory; or (2) the State acted in bad faith by failing to preserve evidence that is potentially exculpatory. See State v. Greenwold , 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994). Bad faith in failing to preserve potentially exculpatory evidence "can only be shown if: (1) the officers were aware of the potentially exculpatory value or usefulness of the evidence they failed to preserve; and (2) the officers acted with official animus or made a conscious effort to suppress exculpatory evidence." Id. at 69. We review de novo whether the destruction of evidence by law enforcement officers constitutes a due process violation. See id. at 66.
¶6 Here, Roby contends that the individual officer notes were potentially exculpatory and that the State acted in bad faith by failing to preserve them. He argues that the individual notes were potentially exculpatory because they could have provided Roby with impeachment evidence at trial. He asserts that he could have impeached the individual officers with the inconsistencies between the single written report and the officers' individual contemporaneous notes. He argues that contemporaneous notes are highly credible, and that those notes would have been particularly useful in this case because the individual officers testified fifteen months after the controlled buy. He also points out that the contemporaneous notes were the only evidence that memorialized the controlled buy as it occurred, because there were no visual or audio recordings of the event. He argues that it is reasonable to believe that the individual officers' contemporaneous notes contained the inconsistencies that the lead officer stated he intended to resolve by creating one report. He contends that those inconsistencies were critical impeachment evidence for the defense, which was based on attacking the credibility of the officers involved in the controlled buy.
¶7 Roby then contends that the officers were aware of the potential usefulness of the inconsistencies between the written report and the individual officers' contemporaneous notes and made a conscious effort to suppress them, demonstrated by their stated objective to eliminate those inconsistencies. He contends that the lead officer would have been aware, at the time he destroyed the individual notes, that they would have been useful to the defense because they memorialized what the officers observed during the controlled buy. He contends that the lead officer's testimony that one written report was created to avoid inconsistencies between that report and reports by individual officers indicated that the individual notes contained inconsistencies among the officers' versions of the events, and that the notes were destroyed to eliminate that problem.
¶8 The State responds that the notes were not potentially exculpatory. It argues that Roby's allegation that there were inconsistencies between the notes and the final report is pure conjecture. It asserts that nothing indicates that the content of the final report differed from what was in any of the notes. The State also points out that Roby had the opportunity to cross-examine the individual officers at trial, and could have attempted to elicit any inconsistencies in that way. It also contends that the lead officer's trial testimony established that he destroyed the notes because he was following police protocol in doing so, rather than out of an attempt to suppress evidence.
¶9 We conclude that Roby has not established that the lead police officer destroyed the individual officers' contemporaneous notes in a conscious effort to suppress exculpatory evidence. To repeat, the lead officer testified that he received all of the other officers' notes of their contemporaneous observations during the controlled buy, that he debriefed those officers, and that he then created a single written report of the investigation and destroyed the individual notes. The officer explained that it was standard procedure for the federal task force that conducted the controlled buy to produce only one written report, regardless of the number of officers involved. He explained that the reason behind that practice was to ensure that what was written was consistent with what the officers "may have [seen] or thought .... That's why I talk to them, the other officers involved, to get what they said they observed, what they did, and I document it." The officer confirmed that the practice of creating a single report was "standard procedure so there's no discrepancy between [the one] report and the other reports that would have been written." He explained further that "[s]ome officers tend to write what other people did without talking to them [based on assumptions about] what they did. This way it's one person who's handling the information and documenting it." He confirmed that it was "[t]o make sure that [their] reports don't have discrepancies."
¶10 The lead officer's testimony, cited by Roby, does not establish that the lead officer destroyed the notes to suppress actual, material inconsistencies between the individual officers' contemporaneous observations as reflected in their notes and the single written report that would have served as impeachment evidence for the defense. Rather, the officer explained that he collected the notes from the individual officers and spoke with them so that he could document what those officers actually observed and the actions they took. The officer explained that the "discrepancies" that could arise from multiple reports occurred when officers made assumptions as to what other officers had seen or done without talking to the officers and verifying that information. Thus, the lead officer's testimony does not suggest that he destroyed the notes of the individual officers to eliminate evidence that the officers had made of their own observations that differed from the information documented in the single report. To the contrary, the officer explained that he followed standard practice by creating a single report to more accurately document the observations and actions of the individual officers. Because the record does not support Roby's claim that police acted with bad faith by destroying the individual notes, his due process claim fails.
¶11 Moreover, we reject Roby's reliance on Killian v. United States , 368 U.S. 231 (1961), in support of his contention that the destruction of the individual notes violated Roby's due process right to present a defense. Roby points out that in Killian , the court determined that the destruction of an agent's notes was not a due process violation where the data from the notes had been transferred by the author onto another document, the notes had served their purpose, and the notes were destroyed according to standard practice. Id. at 242. Roby contends that, by contrast, the notes here were not transferred by their authors, but rather were used to create one report with all inconsistencies eliminated, and then destroyed by the author of the single report. We are not persuaded that Killian dictates the result advocated by Roby. As explained above, we conclude that Roby has not established that the police here made a conscious effort to suppress exculpatory evidence when the lead officer used notes submitted by individual officers to create a single report, and then destroyed the notes. Nothing Roby cites from Killian persuades us otherwise.[2]
¶12 Roby argues that, even if he was not deprived of his due process right to present a defense, this court should exercise its discretion to grant him a new trial in the interest of justice. Roby contends that this court should grant him a new trial because the real controversy was not fully tried without the critical impeachment evidence of the individual officers' notes. See State v. Hicks , 202 Wis. 2d 150, 159-60, 549 N.W.2d 435 (1996) ("a new trial may be ordered ... whenever the real controversy has not been fully tried ...."); see also WIS. STAT. § 751.06. We disagree. Roby had the opportunity to cross-examine the officers as to their observations and any inconsistencies between what they observed and the information in the final report. Nothing before us indicates that the real controversy was not fully tried. We affirm.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Because we conclude that Roby has not established a due process violation of his right to present a defense, we do not reach the question of whether a violation would have been a structural error.