PER CURIAM.
¶1 Elmer Kakwitch appeals a judgment, entered upon a jury's verdicts, convicting him of operating a motor vehicle while intoxicated ("OWI"), as a fourth offense, and obstructing an officer. Kakwitch argues the circuit court erred by denying his pretrial motion for either dismissal of the OWI charge or suppression of evidence based on the State's failure to preserve evidence. Kakwitch argues, in the alternative, that the circuit court erroneously exercised its discretion by denying Kakwitch's request for a jury instruction on the spoliation of evidence. For the reasons discussed below, we reject these arguments and affirm the judgment.
BACKGROUND
¶2 The State charged Kakwitch with OWI and operating with a prohibited blood-alcohol concentration ("PAC"), both as fourth offenses, and obstructing an officer. According to the complaint narrative, Shawano County Sheriff's Deputy Eric Strike was on routine patrol at approximately 1:30 a.m. when he observed a man and a woman standing on the passenger side of a truck stopped in the right-hand lane of a northbound portion of Highway 29. When the officer stopped behind the truck and activated his emergency lights, the individuals began walking northbound away from the truck. The deputy exited his vehicle and yelled, "Police, Stop." The pair continued walking, with the woman, later identified as Frances Sanapaw, separating from the man and turning eastbound. The man finally stopped walking when the deputy "angled" himself in front of the man.
¶3 When asked why he was walking away from his vehicle and why the vehicle was in the roadway, the man stated he had just been out walking; he had not been driving; the vehicle was not his; and he had not been standing next to the vehicle. The man would not provide documentation verifying his identification, but stated his name was Elmer Kakwitch, which was later confirmed. During his interaction with Kakwitch, the deputy observed that Kakwitch had "glassy eyes, odor of intoxicant about his person, and slurred speech."
¶4 Keys in Kakwitch's possession unlocked the truck door and "slid easily into the ignition"; however, the ignition was stuck, and the key broke while the deputy was trying to remove it. Relevant to this appeal, the deputy noted that the right side of the driver's seat was wet, as was half of Kakwitch's right rear pants pocket. The passenger seat was dry.
¶5 Kakwitch refused to perform field sobriety tests and was ultimately arrested on suspicion of OWI, fourth offense, and obstructing an officer. An amended criminal complaint added a charge of operating with a PAC, fourth offense. Kakwitch filed a pretrial motion to dismiss the OWI and PAC charges or otherwise suppress evidence of any wet spot on Kakwitch's pants and the driver's seat, alleging the State failed to preserve evidence of these wet spots.[1] In the alternative, Kakwitch requested an instruction that jurors should infer that the unpreserved evidence would have been beneficial to the defense.
¶6 After a hearing, the circuit court denied Kakwitch's motions to either dismiss the OWI and PAC charges or suppress evidence, and it subsequently denied Kakwitch's jury instruction request at trial. The jury found Kakwitch guilty of the charged crimes. The circuit court imposed consecutive sentences for OWI and obstructing an officer, resulting in an aggregate sentence to the Wisconsin prison system of two years and eight months.[2] This appeal follows.[3]
DISCUSSION
¶7 Kakwitch argues the State violated his right to due process by failing to preserve evidence of the wet spots on the driver's seat and on his pants. Whether a due process violation has occurred is a question of constitutional fact subject to independent review. State v. Sturgeon , 231 Wis. 2d 487, 496, 605 N.W.2d 589 (Ct. App. 1999). However, we will not set aside the underlying historical facts as found by the circuit court unless those findings are clearly erroneous. Id.
¶8 The Due Process Clause of the Fourteenth Amendment requires that criminal prosecutions conform to fundamental notions of fairness and that criminal defendants are given "a meaningful opportunity to present a complete defense." California v. Trombetta , 467 U.S. 479, 485 (1984) ; see also U.S. CONST. amend. XIV, § 1. In Trombetta and Arizona v. Youngblood , 488 U.S. 51 (1988), the United States Supreme Court developed tests to determine whether the government's failure to preserve evidence violated a defendant's due process rights.
¶9 Trombetta and other defendants challenged convictions for drunk driving after the breath samples that showed their blood-alcohol content were destroyed before they could independently test the samples. Trombetta , 467 U.S. at 483. In upholding the convictions, the Supreme Court noted that the police officers had no apparent intent to destroy exculpatory evidence but rather acted in good faith and according to their protocol. Id. at 488. Further, the breath test evidence was not apparently exculpatory; "the chances [were] extremely low that preserved samples would have been exculpatory." Id. at 489. Finally, the defendants had "alternative means of demonstrating their innocence," such as attacking the reliability of the testing. Id. at 490.
¶10 Expanding on this test in Youngblood , the Court noted that while the prosecution must turn over material exculpatory evidence, the Supreme Court has been unwilling to "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Youngblood , 488 U.S. at 58. Youngblood , therefore, "refined" the Trombetta rule, distinguishing between "potentially useful evidence" and "exculpatory evidence" and requiring a showing of bad faith when the police fail to preserve evidence that is merely potentially useful. State v. Greenwold , 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994). After Youngblood , a defendant's due process rights related to the loss of evidence are violated if the police (1) fail to preserve evidence that is apparently exculpatory, or (2) act in bad faith by failing to preserve evidence that is potentially exculpatory. Greenwold , 189 Wis. 2d at 67.
¶11 At the hearing on Kakwitch's motions to dismiss and to suppress, the arresting deputy testified that while he did not take still photographs of the wet spots on the truck seat or Kakwitch's pants, he knew he had video of the scene from his body camera and he can be heard on the video discussing the wetness of both the driver's side seat and Kakwitch's pants with other deputies on the scene. The deputy later printed screen shots from the body camera video in an attempt to show the observed wet spots, although the screen shots did not ultimately produce clear images of either spot.
¶12 When asked why he did not cut a sample of the car's wet upholstery, impound the vehicle, or take Kakwitch's pants into evidence, the deputy said he did not think it was necessary under the circumstances of this "noninjury" OWI case. The deputy added that he felt there was no way to preserve the wet surfaces, as they would evaporate. Because it appeared to be a clear substance, the deputy also believed there would be no stain left behind. In addition, during his investigation, the deputy discovered other evidence indicating that Kakwitch was the truck's driver. The truck was registered to Kakwitch's boss, Tyrone Boyd. Kakwitch had access to the keys and permission to drive the truck. A towing company both towed and stored the vehicle before releasing it to Boyd, almost two weeks after Kakwitch's arrest.
¶13 Citing State v. Hahn , 132 Wis. 2d 351, 392 N.W.2d 464 (Ct. App. 1986), Kakwitch first argues that the State failed to take any meaningful steps to preserve what he characterizes as apparently exculpatory evidence. Hahn , however, is distinguishable on its facts. There, Hahn was charged with homicide by intoxicated use of a motor vehicle. Id. at 353. His theory of defense was that a mechanical defect in the truck, not his intoxication, caused the crash. Id. at 358-59. The sheriff's department had the truck impounded, but it failed to prevent the truck's release to a scrap company. Id. at 354. The truck was dismantled, with some of its parts sold, by the time Hahn asked to inspect it. Id. In affirming the circuit court's order dismissing the charge against Hahn, this court held that the "truck had an apparent exculpatory value which the state recognized, evidenced by its impoundment of the vehicle," and its destruction made it impossible for the defendant to obtain other comparable evidence. Id. at 360.
¶14 Here, unlike in Hahn , we are not persuaded that the exculpatory value of the wet spot evidence, if any, was "apparent." The wet spots were but one factor law enforcement utilized in determining the driver of the truck. Kakwitch also had the keys to the truck in his pocket; the truck belonged to his employer; and he had permission to drive the truck. Even without the wet spots, it is likely Kakwitch would have been charged as the driver of the vehicle based on the other evidence, which would have been sufficient to support a reasonable inference that Kakwitch was the truck's driver.
¶15 To the extent Kakwitch asserts that law enforcement was nevertheless obligated to take clear photographs of the spots, the arresting officer could reasonably believe his use of the body camera video would be sufficient to preserve images of the scene. In any event, as the State argues, the record shows that it is more likely that clear photographs of the wet spots would have produced inculpatory, rather than exculpatory, evidence. As noted above, the body camera recorded the deputy making repeated contemporaneous statements about the wet spots to fellow officers. A second officer also testified at trial that he observed the wet spot on the seat. Further, Kakwitch himself did not appear to deny the existence of the wet spot on the seat of his pants when a deputy asked him about it at the scene. Thus, it is not clear that photographs, had they been taken, would have demonstrated the nonexistence of the spots or otherwise exculpated Kakwitch.
¶16 Kakwitch, however, contends that had he been able to test the wet spots, and had such testing determined the spots were not comprised of the same substance, the spots would have been exculpatory. We are not persuaded by this argument. Whether testing would have revealed the spots were the same or not is purely speculative. Further, the exculpatory value of preserving wet spots that would likely evaporate before any testing could be completed is not readily apparent. To the extent any residue would have remained on the seat and on Kakwitch's pants, we see no reason why Kakwitch could not have tested the respective fabrics himself. His employer owned the truck and his pants were likely held at the jail pending his release. Assuming neither the truck seat nor the pants had been cleaned, Kakwitch was reasonably capable of testing them. While the chain of custody was not recorded for those materials, it was unlikely that any of the claimed exculpatory evidence was lost. In any event, because the wet spot evidence was not "apparently" exculpatory, we reject this due process claim.
¶17 Emphasizing that his arrest was based, in part, on the corresponding wet spots, Kakwitch alternatively argues that the deputy knew the spots were potentially exculpatory and that the State acted in bad faith by failing to preserve "potentially" exculpatory evidence. The State acknowledges that, at most, the wet spots would have had "potential exculpatory value." Assuming the evidence's potential exculpatory value, the question becomes whether the officers acted in bad faith when failing to take adequate steps to preserve the subject evidence. Bad faith can only be shown if "(1) the officers were aware of the potentially exculpatory value or usefulness of the evidence they failed to preserve; and (2) the officers acted with official animus or made a conscious effort to suppress exculpatory evidence." Greenwold , 189 Wis. 2d at 69.
¶18 Kakwitch argues that the deputy's failure to take any steps to preserve the spots-either by taking still photographs, impounding the truck, or placing the jeans into evidence-cannot be dismissed as mere negligence but, rather, rose to the level of bad faith. We disagree. The fact that law enforcement chose to take a body camera video that turned out to be of poor quality, rather than still photos, does not establish bad faith. Had the deputies acted with animus or with an intent to hide the wet spots, they would not have taken any video. Further, as noted above, at least two deputies can be heard discussing the wet spots on the body camera video, and Kakwitch made no comment to the contrary.
¶19 At the motion hearing, the arresting deputy explained that he did not feel the need to take Kakwitch's pants into evidence for a "noninjury" OWI. Further, given the deputy's belief that the spot would evaporate, it was reasonable for him to conclude there was no need to take the pants into evidence. The deputy further testified at the motion hearing that it was not "standard procedure" for the sheriff's department to impound a vehicle under the circumstances of this case. According to the deputy, a vehicle would generally be impounded only where there is injury, death, or items in the vehicle, such as drugs, that would warrant a vehicle's seizure. The deputy added that in his "eight years in Shawano County," he had not seen "anyone take a regular OWI vehicle into impound" to preserve evidence. The record does not support any claim that law enforcement acted with official animus or made a conscious effort to suppress exculpatory evidence. Therefore, we reject this alternative due process claim.
¶20 Next, Kakwitch argues that the circuit court erred by denying his request for a jury instruction on the spoliation of evidence. The decision whether to give a requested jury instruction lies within the circuit court's broad discretion. State v. Hubbard , 2008 WI 92, ¶28, 313 Wis. 2d 1, 752 N.W.2d 839. When reviewing a discretionary decision, this court examines the record to determine if the circuit court logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a reasonable conclusion. State v. Keith , 216 Wis. 2d 61, 69, 573 N.W.2d 888 (Ct. App. 1997). Furthermore, a reviewing court may search the record for reasons to sustain the circuit court's exercise of discretion. State v. Pharr , 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983).
¶21 Here, Kakwitch requested the following instruction concerning the wet spots:
Law enforcement failed to preserve evidence of an alleged "wet spot" on the driver's seat and pooling liquid on the driver's floorboard of the pickup truck, together with an alleged corresponding wet spot on the defendant's right buttock area. You should, but are not required to, infer that the lack of said evidence is beneficial to the defendant.
The circuit court denied Kakwitch's request, concluding that "not reading" the instruction "would be consistent" with the court's decision to deny the pretrial motions for dismissal or evidence suppression and the record as it existed at trial.
¶22 In denying the pretrial motions, the circuit court recognized that the wet spot evidence could have been exculpatory had Sanapaw also had a wet spot on her pants, as testing of the substances might have permitted a determination about who was sitting in the driver's seat. According to the record, however, only Kakwitch's pants had a wet spot corresponding with the wet spot on the driver's seat. Law enforcement made reasonable efforts to preserve evidence of the spots with body camera video, and the court made no finding of negligence in that regard under the circumstances of this case. Although the court denied Kakwitch's request for a spoliation instruction, it reiterated that Kakwitch was free to argue to the jury that the State should have presented "more evidence" or "better evidence." Ultimately, Kakwitch fails to develop any argument establishing that the circuit court erroneously exercised its discretion when denying the requested jury instruction.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The motion also sought dismissal on grounds the State failed to preserve evidence of the keys found on Kakwitch's person. Kakwitch does not renew this ground for dismissal on appeal. We therefore deem it abandoned. See A.O. Smith Corp. v. Allstate Ins. Cos. , 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (holding that issues raised before the circuit court but not raised on appeal are deemed abandoned).

Pursuant Wis. Stat. § 346.63(1)(c) (2017-18), the circuit court did not enter judgment on the PAC charge. That statute provides that if a person is found guilty of both OWI and PAC "for acts arising out of the same incident or occurrence, there shall be a single conviction for purposes of sentencing." All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Although the notice of appeal refers to both convictions, Kakwitch's brief states that because the arguments on appeal do not impact prosecution of the obstructing charge, he does not seek reversal of that conviction.