COURT OF APPEALS
DECISION
DATED AND FILED

May 21, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP24-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2014CF159

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RAYNARD R. JACKSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Grant County: CRAIG R. DAY, Judge. *Affirmed.*

Before Blanchard, Graham and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Raynard R. Jackson appeals a judgment, entered upon a jury's guilty verdict, convicting him of throwing or expelling bodily substances, while a prisoner, at or toward a prison officer.  Jackson argues that the judgment should be vacated and the charge dismissed because the State destroyed exculpatory evidence before trial in violation of his due process rights.  For the reasons that follow, we affirm.

**BACKGROUND**

¶2      The State charged Jackson with one count of assault by a prisoner, alleging that on August 1, 2014, while an inmate at the Wisconsin Secure Program Facility (WSPF), he spit at correctional officer J.F.  According to the complaint, Officers J.F. and R.G.[1] were escorting Jackson to the recreation area when J.F. told Jackson he needed to cut his fingernails.  Jackson swore at J.F. and asked to go back to his cell.  The officers escorted him back to his cell and, as Jackson entered, he turned around and spat toward J.F.'s face.  J.F. reported that he "moved to his right, putting up his hand," and that Jackson's spittle hit his hand.  It is undisputed that J.F. was wearing latex gloves at the time of the incident, and that he threw them in the garbage shortly thereafter.  It is also undisputed that there was a video camera in the vestibule just outside of Jackson's cell.  The video showed the officers leaning away from Jackson's cell, but did not capture Jackson, who was inside his cell.  The video showed J.F. raising his gloved hand in front of his face.[2]

---

[1] The criminal complaint refers to the officers only as "victim 1" and "witness 1." However, the officers were identified by name at Jackson's trial.

[2] As acknowledged in the State's brief, the video footage from the vestibule camera is not included in the appellate record.  The summary of what it shows is taken from the trial testimony. Jackson does not dispute the State's representation of the vestibule video's content.

¶3     Jackson denied ever spitting at J.F.  He moved to dismiss the charge on the ground that the State failed to preserve exculpatory evidence, namely, (1) the latex gloves worn by J.F. at the time of the incident, and (2) video footage from purported surveillance cameras inside Jackson's cell, and in the hallway and recreation areas.  Jackson's theory was that, if preserved, the gloves could have been tested for the presence of his spit or his DNA.  He alleged that, if the gloves tested negative for his spit or DNA, this would prove that he did not spit toward J.F.  With regard to the video, Jackson's motion acknowledged that the State preserved footage "of the hallway in front of defendant's cell" but complained that the State destroyed footage from other cameras that "would show [J.F.'s] treatment of defendant and throwing intentionally the gloves away."

¶4     At a hearing on Jackson's motion to dismiss, J.F. testified that, when they arrived back at Jackson's cell, Jackson spat at him and J.F. felt the spittle hit one of his latex gloves.  He further stated that he and R.G. held Jackson down until other officers arrived.  J.F. testified that whatever saliva hit his glove was wiped off as he wrestled Jackson to the ground, and that he threw his latex gloves into a nearby trash container.

¶5     Jackson testified that there was a video camera inside his cell, which he suggested should have captured the incident.  He also testified that there were video cameras in the hallway and near the recreation area, which he suggested should have contained footage of what occurred while the officers escorted him down the hallway to and from the recreation area.  In particular, Jackson testified that J.F. had tugged forcefully on Jackson's wrists and handled him roughly as he entered the recreation area.

¶6      Jeff Lee, the electronics technician at WSPF, testified that there was no video camera inside of Jackson's cell on August 1, 2014. Lee explained that it had been removed in June 2014. He testified that there were video cameras in the hallway but he did not know whether there was a camera in the recreation area.

¶7      The circuit court denied Jackson's motion, determining that the gloves were not apparently exculpatory, and that the record was insufficient to find that J.F. destroyed them in bad faith. In denying Jackson's motion for reconsideration, the court explained:

> The best that the glove could do would be to disclose no bodily fluid or DNA for Mr. Jackson. The best that it could do for Mr. Jackson by way of exculpation is to have nothing, and nothing is, at best, ambiguous. Nothing might mean that Mr. Jackson never spit. Nothing might mean that Mr. Jackson spit and missed the glove. Nothing might mean that the spit that was on the glove got wiped off in the ensuing scuffle. And when, at best, it can mean nothing, it is the absence of something at best, it cannot logically in my mind be apparently exculpatory. It is potentially exculpatory, but not apparently.
>
> And if it can't be said to be apparently exculpatory, then its destruction is not such as requires a remedy of dismissal. It being potentially exculpatory, we apply a bad faith standard and there, as I found before, is nothing in the record to support a finding that the glove's destruction was in bad faith.

¶8      With regard to the video footage, the circuit court determined that Jackson failed to prove that there was a camera inside his cell on August 1, 2014, and, as such, there was nothing for the State to preserve. As to the State's alleged failure to preserve footage from the hallway and recreation areas, the court determined that Jackson failed to demonstrate that such footage would have had any exculpatory value, given that those cameras would not have shown whether or not Jackson spit at J.F. after they returned to Jackson's cell.

¶9 Jackson represented himself at trial. He testified that he and J.F. exchanged insults on the way back to his cell. Jackson testified that, when they arrived back at his cell, he turned his head toward the officers and acted like he was going to kick J.F. He said that R.G. reacted immediately by bringing him down onto the bed in his cell. Jackson denied ever spitting at J.F. He also maintained that there was a video camera inside his cell. His theory was that the State destroyed the gloves and video evidence to cover up the fact that Jackson had not spit at J.F. and that J.F. had been physically aggressive with Jackson. The jury found Jackson guilty. Jackson appeals the judgment of conviction, challenging the denial of his motion to dismiss.

**DISCUSSION**

¶10 Jackson argues that the State violated his right to due process by failing to preserve as evidence J.F.'s gloves, and video footage allegedly recorded by cameras inside his cell and in the hallway and recreation areas. A defendant's due process rights may be violated if the State: (1) failed to preserve evidence that is apparently exculpatory; or (2) acted in bad faith by failing to preserve potentially exculpatory evidence. ***State v. Greenwold***, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994). Bad faith is shown where: "(1) the officers were aware of the potentially exculpatory value or usefulness of the evidence they failed to preserve; and (2) the officers acted with official animus or made a conscious effort to suppress exculpatory evidence." ***Id.*** at 69.

¶11 Whether a due process violation has occurred is a question of constitutional fact subject to independent review. ***State v. Sturgeon***, 231 Wis. 2d 487, 496, 605 N.W.2d 589 (Ct. App. 1999). However, we will not set aside the

5

underlying historical facts as found by the circuit court unless those findings are clearly erroneous. *See id.*

¶12 Jackson maintains that the destruction of J.F.'s gloves violated due process because testing might have shown that Jackson's spittle was not on the gloves. As the circuit court explained, the discarded gloves are, at best, potentially exculpatory because Jackson can assert only that the gloves might have tested negative for his DNA. The complete absence of Jackson's DNA on the gloves is the only result that would have helped him, and even that result had limited exculpatory value. There is no tenable argument that the gloves were apparently exculpatory.

¶13 To the extent the gloves were potentially exculpatory, Jackson has failed to prove bad faith. There was "nothing by way of objective fact to support" the notion that officers acted with "ill-will, malice, and intent to deprive a defendant of his opportunity to defend himself." "Intentional destruction, without more, does not establish bad faith." *State v. Luedtke*, 2015 WI 42, ¶56, 362 Wis. 2d 1, 863 N.W.2d 592. Even if Jackson had demonstrated negligence, this would not be sufficient. *See Greenwold*, 189 Wis. 2d at 68-69.

¶14 Jackson's theory of malicious intent is nonsensical. It asks this court to infer that J.F., predicting a future trial, decided to throw the gloves in the trash moments after the incident because he knew a crime lab analyst would not find saliva containing Jackson's DNA on them. The illogic of this theory is accentuated by the notion that the gloves likely contained Jackson's touch DNA that was transferred when J.F. wrestled Jackson to the ground, and that the State only had to prove that Jackson spat "at or toward" an officer. *See* WIS. STAT. § 946.43(2m)(a)

(2017-18).[3] The State did not have to prove that Jackson's spittle hit J.F.'s glove. There was no untoward reason for J.F. to throw the gloves in the trash because the presence or absence of Jackson's DNA on the gloves was essentially immaterial.

¶15 Next, we conclude that Jackson has failed to demonstrate a due process violation arising from the State's failure to preserve video footage from cameras in his cell or in the hallway or recreation areas. The circuit court determined that Jackson failed to prove that there was a camera inside his cell on August 1, 2014.[4] Although Jackson maintains that there was a camera in his cell, the circuit court's finding is not clearly erroneous and is, in fact, supported by ample evidence. Regardless, Jackson was permitted to present evidence and argue to the jury that there was a camera in his cell and that the destruction of any video footage proved his innocence. *See Luedtke*, 362 Wis. 2d 1, ¶58 (a panoply of due-process safeguards exists to allow a defendant the opportunity to present a meaningful defense and to protect the right to a fair trial; the overarching issue is whether the defendant received a fair trial without the destroyed evidence). Jackson aggressively cross-examined the State's witnesses and introduced evidence supporting his theory of defense, including that there was a video camera in his cell on August 1, 2014.

¶16 Like the circuit court, we conclude that, even if there were video cameras in the hallway and recreation areas, any footage was not apparently exculpatory. The spitting incident was alleged to have occurred at Jackson's cell,

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[4] The State's brief asserts that the circuit court made an affirmative factual finding that there was no camera in Jackson's cell. Jackson's brief points out that the circuit court actually found that Jackson presented insufficient evidence to prove the existence of a camera in his cell. While Jackson is technically correct, we see little practical difference.

not the areas in question, and further, there was no audio to record any verbal exchanges between Jackson and the officers as they proceeded down the hallway to and from the recreation area. Any video footage from hallway cameras would not have proven whether Jackson spat at J.F. after they returned to his cell and, at best, would have been potentially exculpatory.

¶17    As with the gloves, Jackson has failed to prove that potential footage from cameras in the hallway and recreation areas was destroyed in bad faith. Given that the spitting incident occurred at Jackson's cell, investigating officers had no reason to believe that footage from the other areas had any exculpatory value. The State instead preserved the relevant video that actually existed, namely, the footage from the camera above the vestibule outside of Jackson's cell.

¶18    Jackson argues that prison officers knew that video footage from cameras in the hall and recreation areas was potentially exculpatory because he requested its preservation on August 8, 2014. We disagree. Jackson requested that the prison "maintain footage for civil [and] criminal proceedings." This language would not lead a reasonable person to believe that all video should be preserved, even footage from cameras that were outside the area where the spitting incident occurred.

¶19    In sum, neither J.F.'s gloves nor the unpreserved video footage was apparently exculpatory. To the extent this evidence was potentially exculpatory, Jackson has not shown that it was destroyed in bad faith. Therefore, the State's failure to preserve this evidence does not constitute a due process violation.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.