COURT OF APPEALS
DECISION
DATED AND FILED

July 11, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP418**

STATE OF WISCONSIN

Cir. Ct. No. 2011CF489

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

BRIAN D. FRAZIER,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Columbia County: TODD J. HEPLER, Judge. *Affirmed*.

Before Blanchard, Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Brian Frazier appeals an order denying his postconviction motion that was pursued under WIS. STAT. § 974.06 (2021-22).[1] We affirm.

¶2     In 2013, Frazier pled no contest to, and was convicted of, first-degree sexual assault of a child and physical abuse of a child.  He unsuccessfully pursued postconviction relief under WIS. STAT. RULE 809.30.  This concluded in 2021 with a decision by this court and denial of Frazier's petition for review by our supreme court.  Frazier's current motion was initially filed in 2021 as one for DNA testing of evidence, but he later added further allegations that the parties now agree brought the motion under WIS. STAT. § 974.06.  The circuit court denied the motion without holding an evidentiary hearing.[2]

¶3     Some of Frazier's claims relate to ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that such performance prejudiced his defense.  ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).

## I.  New Claims Of Ineffective Assistance By Trial Counsel

¶4     Frazier argues that his trial counsel was ineffective in several ways. These include by not raising issues related to the search warrant and search; by not conducting an investigation of bedsheet evidence, including DNA testing; and by

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] When Frazier first moved for DNA testing of evidence, the circuit court took testimony from police to establish that the evidence had been destroyed.  This evidentiary hearing occurred before the court denied Frazier's later postconviction motion without holding a hearing.

not investigating the alleged presence of blood on a bedsheet. As we have summarized in prior opinions in this case, the blood evidence was, according to the prosecution, consistent with the victim's account that a sexual assault had occurred on Frazier's bed and that the victim had bled as a result of the sexual assault. *See State v. Frazier*, No. 2019AP2120-CR, unpublished slip op. ¶2 (WI App April 1, 2021). None of these issues were raised in Frazier's postconviction proceeding under WIS. STAT. RULE 809.30.

¶5 The State argues that we should not review these claims because they are barred by WIS. STAT. § 974.06(4), as interpreted by *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994). Under that opinion, when a defendant has already pursued a postconviction motion under WIS. STAT. RULE 809.30, § 974.06(4) bars a motion under § 974.06 unless the defendant shows, in the words of the statute, a "sufficient reason" for not having raised the current motion's claims in the earlier postconviction motion.

¶6 To show a sufficient reason why he did not raise these claims of ineffective assistance of trial counsel in his first postconviction proceeding, Frazier argues in this appeal that his earlier postconviction counsel was ineffective by not raising them. The State responds that such an ineffectiveness argument requires the defendant to demonstrate that his current claims are "clearly stronger" than his earlier postconviction claims that were actually raised. *See State v. Romero-Georgana*, 2014 WI 83, ¶4, ¶¶45-46, 360 Wis. 2d 522, 849 N.W.2d 668.

¶7 We conclude that Frazier's current claims are not clearly stronger than the one that he raised earlier. In doing so, we rely partly on the history of this case to show that, while Frazier's argued ineffectiveness claim involving trial

3

counsel ultimately did not prevail, we regarded that claim as having considerable strength in at least one of the two parts of the analysis, as we now explain.

¶8    Frazier's claim in his first postconviction motion was that his trial counsel was ineffective by failing to advise Frazier that he could file a viable suppression motion arguing that a custodial interrogation of Frazier occurred without the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966).  *See State v. Frazier*, No. 2019AP2120-CR, ¶9.  In Frazier's first appeal, we concluded that his trial counsel's performance was deficient because "Frazier was in custody at the time of the confession and, because police had not read him the *Miranda* warnings, a motion to suppress his confession should have been successful." *State v. Frazier*, No. 2017AP1249-CR, unpublished slip op. ¶¶1, 9 (WI App August 2, 2018).  We remanded for an evidentiary hearing on the issue of prejudice, *id.*, ¶36, but our supreme court vacated our decision and remanded for a hearing on both deficient performance and prejudice.  *State v. Frazier*, No. 2017AP1249-CR, unpublished slip op. (WI February 27, 2019).

¶9    In our second opinion, after that hearing, we assumed, without deciding, that trial counsel's performance was deficient in connection with the failure to move for suppression.  *See Frazier*, No. 2019AP2120-CR, ¶16. However, we ultimately rejected the claim on the ground that Frazier did not establish that he would have turned down the plea offer, which he ultimately accepted, if counsel had performed in a non-deficient manner. *Id.*, ¶¶21-35.

¶10    At least as to deficient performance, we conclude that the original postconviction claim was relatively strong.  In that light, by comparison, and without attempting to discuss the details of each of Frazier's new claims raised in his current motion, we conclude that none of the new claims are clearly stronger

than the ineffectiveness of trial counsel claim that was argued in his first postconviction proceeding. Therefore, he may not raise these new claims in his current motion under WIS. STAT. § 974.06.

## II. Destruction Of Evidence

¶11 Separately, Frazier argues that his rights to due process and equal protection were violated when police disposed of the bedsheet and related blood evidence prematurely in 2016, in violation of WIS. STAT. § 968.205. The State does not dispute that this statute was violated.

¶12 Frazier's equal protection argument appears to be that, if WIS. STAT. § 968.205 applies to other police departments, and other departments follow that law, then this department's failure to follow that law deprives him of the protections that other citizens have enjoyed. However, Frazier does not develop an argument using legal authority that establishes the existence of an equal protection claim in this situation. If this framing were accepted, it appears that an equal protection claim would be available whenever a government violates a statute in its actions relating to one person, but not to others. This does not appear to be the current state of the law. Furthermore, Frazier does not develop an argument establishing what the remedy for such a violation would be in the context of a criminal case.

¶13 As to due process, Frazier relies on cases such as *State v. Greenwold*, 189 Wis. 2d 59, 525 N.W.2d 294 (Ct. App. 1994). In that case, the court described the test that applies to the loss or destruction of evidence before trial in a criminal case. Under that test, a due process violation occurs if the evidence either: (1) had exculpatory value that was apparent when the evidence

5

was lost or destroyed, or (2) was potentially exculpatory and was lost or destroyed in bad faith. *Id.* at 67.

¶14     The State argues that there is no similar constitutional right regarding evidence that is lost or destroyed *after* trial.  However, for purposes of resolving this appeal, we assume, without deciding, that the above test applies in a post-trial situation.

¶15     Frazier's theory is that the destroyed bedsheet evidence, if tested, could have shown an alternate source of the blood that the State claimed was on it. Specifically, testing may have shown it to be menstrual blood of Frazier's girlfriend, rather than blood from the victim.  This argument fails to satisfy the first part of the above test, because the actual source of the blood would not have been "apparent" at the time the evidence was destroyed.  At best, it was only potentially exculpatory.

¶16     As to the second part of the legal test, for potentially exculpatory evidence, Frazier argues that the evidence was lost or destroyed in bad faith.  Bad faith is shown if the officers were aware of the potentially exculpatory value or usefulness of the evidence, and then acted with official animus or made a conscious effort to suppress exculpatory evidence.  *Id.* at 69.  Frazier's argument does not establish either of these components.  He does not allege facts showing, or point to evidence that, the officer was aware of Frazier's theory that the evidence could be exculpatory because testing of the bedsheet might show an alternate source of the blood.

¶17     And, more importantly, Frazier does not point to evidence of official animus or a conscious effort to suppress exculpatory evidence.  The officer who authorized destruction of the bedsheet testified that it was destroyed because "[t]he

case was over five years old, and I had heard nothing on it, and … I decided to purge it." Frazier's only question on cross-examination was whether the department gave notice of the intended destruction. This testimony does not show official animus or a conscious effort. Instead of presenting evidence that directly shows bad faith in connection with the bedsheet specifically, Frazier argues that the officer showed bad faith in *other* actions he took in this case, including in relation to the interrogation and search warrant. Frazier asks us to then impute this same alleged bad faith into the decision to destroy the bedsheet. However, Frazier fails to refer to any non-speculative evidence that could support a determination that any of these other actions were based on official animus or a conscious effort, and no reasonable inference can be drawn from these actions that destruction of the bedsheet was done in bad faith.

### III. Ineffective Assistance Of Postconviction Counsel

¶18    Frazier argues that his postconviction counsel was ineffective at the evidentiary hearing that was held in the first postconviction proceeding. The basis for the claim is that postconviction counsel failed to ask him the questions that would have elicited from Frazier testimony as to why Frazier would have rejected the plea offer if his trial counsel had informed him about a potential ***Miranda***-based suppression motion. This claim regarding postconviction counsel differs from Frazier's other current arguments about ineffective assistance by postconviction counsel, because it relates to the issue that counsel actually raised and litigated, rather than to issues that postconviction counsel did not raise, and that Frazier is now attempting to raise for the first time.

¶19    The State responds to this claim of *postconviction* counsel's ineffectiveness by arguing that Frazier's claim that his *trial* counsel was

7

ineffective regarding suppression "was already litigated and is simply not justiciable here." The State purports to defeat the current claim by characterizing it as "simply a rephrasing or re-theorizing of his previously-litigated challenge."

¶20    The State is correct that, in some general linguistic sense, Frazier is seeking relitigation of the claim that his trial counsel was ineffective. However, he is doing so in the same way that *all* ineffectiveness claims seek relitigation of the part of the case that was allegedly marred by ineffectiveness. Rather than being a flaw in Frazier's pleading, relitigation would be the proper remedy if he were to prevail now on his claim that his postconviction counsel was ineffective in litigating the issue raised in the first postconviction motion. The State's argument that an ineffectiveness claim is merely a "re-theorizing" of the original claim would render many ineffective assistance claims not "justiciable," and is not supported by any case law that is cited or that we know of.

¶21    In addition, the procedural bar of WIS. STAT. § 974.06(4) does not apply, because it bars only claims that could have been raised in the first postconviction motion. Here, Frazier's claim that postconviction counsel was ineffective in litigating the first postconviction motion could not have been raised in that first motion, because the alleged ineffectiveness had not occurred yet. Instead, Frazier has properly followed the longstanding procedure, by using a second motion, under § 974.06, to claim that his postconviction counsel was ineffective. *See **State ex rel. Rothering v. McCaughtry***, 205 Wis. 2d 675, 681-84, 556 N.W.2d 136 (Ct. App. 1996) (a habeas or a § 974.06 motion in the circuit court is the proper procedure for a claim of the ineffectiveness of postconviction counsel, unless it relates to an issue that was argued before this court or was preserved in the appellate record without the necessity of a postconviction motion).

¶22 Although Frazier clearly frames his argument as one that postconviction counsel was ineffective at the evidentiary hearing in the first postconviction proceeding, the State fails to acknowledge that Frazier's argument is about his postconviction counsel's effectiveness. As a result, the State fails to discuss the relevant issue, namely, whether Frazier's motion alleged sufficient facts to entitle him to an evidentiary hearing on his claim of ineffective assistance by postconviction counsel. Under the applicable test, the court first looks at whether the material facts alleged in the postconviction motion, if true, would entitle the defendant to relief. *State v. Jackson*, 2023 WI 3, ¶11, 405 Wis. 2d 458, 983 N.W.2d 608. If they do, then the court must determine whether the record conclusively demonstrates that the defendant is not entitled to relief. *Id.*

¶23 Frazier's claim is made in response to what we identified in an earlier appeal as omissions from his postconviction testimony on the subject of whether he would have rejected the plea offer if trial counsel had properly advised him about the potential suppression motion. In our most recent opinion, we concluded that Frazier's postconviction claim regarding the suppression motion was properly denied because his testimony failed to establish prejudice. *See Frazier*, No. 2019AP2120-CR, ¶35. We concluded that the circuit court had made an "implicit finding" that Frazier was not credible in testifying that he would have rejected the plea offer. *Id.*, ¶¶21-22. Among other reasons for our reaching that conclusion, we noted that, at the evidentiary hearing, Frazier was asked only whether he would have accepted the plea offer and gone to trial. In response, he gave only "conclusory" answers without describing any factors that were part of his considerations, and thus he "said absolutely nothing in his testimony about *why* he would have passed on the plea offer." *Id.*, ¶29 (emphasis in original).

¶24    Frazier now claims that his postconviction counsel was ineffective by not asking him the questions that would have led him to provide the type of testimony that we observed was missing.  We conclude that this claim was properly denied.  In doing so, we assume without deciding that Frazier sufficiently alleged in his motion that postconviction counsel's performance was deficient because postconviction counsel did not ask further questions of Frazier, permitting him to explain his reasons for taking the plea offer and how his reasoning would have changed if trial counsel had not been deficient.  As to prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland* 466 U.S. at 694.  A reasonable probability is one sufficient to undermine confidence in the outcome.  *Id.*

¶25    Frazier's current postconviction motion provided some detail about what his additional testimony would have been, but not much.  He averred in his affidavit:  "Had [counsel] asked, I would have testified about my girlfriend's period blood being the cause of any Luminol reaction."  The reference to a Luminol reaction is to police having sprayed Luminol on the bedding and floor area around Frazier's bed, which indicated the presence of blood, as described in the criminal complaint.  He further averred the following in a sentence fragment:  "Also the impeachable statements of [the victim] at his interview."  The reference to impeachable statements was explained in his brief supporting the motion:  "This interview had issues which would make it impeachable, for example the claim that there was 'blood everywhere.'"  In sum, this proposed additional testimony is about what Frazier believes were weaknesses in the State's evidence.  We understand his argument as being that these weaknesses, if combined with suppression of his own statement due to a *Miranda* violation, would have led him

to choose a trial over the plea offer. These assertions by Frazier at least to a degree respond to our concern about his failure to testify about his views of the evidence, as observed in our opinion. *Frazier*, No. 2019AP2120-CR, ¶34.

¶26 However, Frazier still does not propose to testify about his views at that time on another point that we discussed in our opinion. This point was how he viewed, when he was considering the plea offer, the fact that the offer would allow him to avoid the risk of a mandatory minimum sentence of twenty-five years of initial confinement by reducing the charge from sexual intercourse to sexual contact with a child. *Id.*, ¶33.

¶27 On this point, instead of describing proposed testimony, Frazier appears to respond by arguing that the mandatory minimum sentence statute is unconstitutional as a violation of separation of powers and as vague or overbroad. However, the constitutionality of the statute is not relevant to the question now before us, which is how Frazier viewed this potential penalty *at the time he was considering the plea offer* that allowed him to avoid it. Frazier does not present us with any reason to conclude that, at that time, he operated under the understanding that he was at little or no risk of having the mandatory minimum sentence imposed because the statute could not lawfully be applied to him.

¶28 Thus, the only new information we have from Frazier appears to be his limited, somewhat generic view about the evidence on the points above, together with his continued silence about his views on the value of the plea offer, including the potentially highly significant plea offer to avoid the mandatory minimum imprisonment sentence. This proposed testimony, even if believed by the factfinder, is not sufficient to create a reasonable probability that the result of a new evidentiary hearing, at which Frazier would testify as described above, would

11

be different, in the sense that it would result in a conclusion that Frazier would have rejected the plea offer if he had known about the suppression issue. Because he cannot establish prejudice based on postconviction counsel's failure to ask him additional questions without showing the probability of a different conclusion, this postconviction claim fails to allege facts which, if true, would entitle him to relief. Therefore, the claim was properly denied without an evidentiary hearing.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.