STATE of Wisconsin, Plaintiff-Respondent,

v.

Joshua Lashawn MUNFORD, Defendant-Appellant.†

Court of Appeals

*No. 2009AP2658–CR. Submitted on Briefs October 6, 2010.
—Decided November 16, 2010.*

2010 WI App 168

(Also reported in 794 N.W.2d 264.)

† Petition for Review denied 2-7-11.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph L. Sommers*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *James M. Freimuth*, assistant attorney general.

578

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Joshua Lashawn Munford appeals the judgment of conviction entered after a jury found him guilty of first-degree intentional homicide. Munford argues that: (1) his due process rights were violated when the State destroyed evidence with apparent exculpatory value; and (2) the trial court abused its discretion when it prevented Munford from telling the jury that the State destroyed the evidence. Because we conclude that the evidence's purported exculpatory value was not apparent and that the trial court properly exercised its discretion, we affirm.

## BACKGROUND

¶ 2. In January 2007, the State filed a criminal complaint charging Munford with one count of first-degree intentional homicide. According to the criminal complaint, Munford shot and killed Bryant Pendleton on North 39th Street in Milwaukee following an altercation involving multiple people.

¶ 3. According to the trial testimony, in the early morning hours of January 26, 2007, Munford was driving his 1990 Ford Econoline van on North 39th Street when he stopped and parked the van on the street. About the same time, a number of people from the neighborhood assembled in the street, including the victim, Pendleton.

¶ 4. According to several witnesses, a man named Jeremy Coleman then exited Munford's van and began arguing with Pendleton. The argument swiftly devolved into a fistfight in front of the van.

¶ 5. Albert Chappell testified that he then entered Munford's van through the rear passenger's side door, purportedly to question Munford about a burglary that

579

had occurred several days before. Witnesses testified that Munford pulled out a gun and threatened to shoot Chappell. Simultaneously, Prince Underwood opened the front driver's side door of the van and punched Munford. Chappell then rolled out of the passenger's side of the van, while Munford exited from the driver's side. Witnesses stated that Munford shot once at Underwood who was fleeing the van after punching Munford. The bullet possibly grazed Underwood's left hip.

¶ 6.   Witnesses then saw Munford return to his van and drive up to the street corner, where he made a U-turn and then drove back to the scene, stopping the van in the middle of the street. Underwood testified that when Munford returned, Pendleton, Chappell, and Jessica Halverson—Chappell's girlfriend—gathered by the van. According to Underwood, Munford pointed his gun out the window of the van and stated, "I told you all I'm going to kill you all, I ain't playing with you all today." Sylvester Reed testified that he was standing a few feet behind Pendleton when he saw Munford tap his gun on the window of the van and tell Pendleton to back away or Munford would kill him. Reed testified that Pendleton told Munford, "[I]f you gonna kill me, kill me now."

¶ 7.   Underwood testified that he then entered the van, despite Munford's threats, and that while he was in the van, someone reached into the van and struck Munford. Three witnesses—Halverson, Reed, and Sarina Shaffer—testified that Pendleton hit Munford.

¶ 8.   Those same three witnesses, as well as Underwood, all testified that Munford then fired approximately four shots at Pendleton, who fell to the ground, mortally wounded.

¶ 9.   Underwood, who was still inside the van after Munford shot Pendleton, said Munford began to cry

580

and started driving off slowly. Underwood said he exited the van when Munford told him to get out or Munford would kill him.

¶ 10.    Every eyewitness to the shooting who testified at trial—Chappell, Halverson, Shaffer, Underwood, and Reed—said no one else at the scene displayed a gun or fired any shots.

¶ 11.    In the street near Pendleton's body, police found three .32–caliber casings and no other casings. Police seized Munford's van the next morning and had it towed to a police garage, where it was examined by Milwaukee Police Detective Scott Gastrow and police department identification technicians. Detective Gastrow testified that he examined the interior and exterior of the van, noting damage that he observed, and looked for evidence such as bullets and bullet casings. Because of the dim lighting in the van, he used high-candled power lights on stands to illuminate the inside of the van to make searching easier. Thirty-two photographs of the van were taken during the examination.

¶ 12.    Detective Gastrow found a bullet casing in the front seat of the van along with broken glass. He also noted that several of the windows in the van were broken and that there was an oval-shaped hole in a small window on the passenger's side of the van. There was a corresponding tear in the curtain in front of the window. Believing the hole could possibly be from a bullet, Detective Gastrow testified that he then checked the entire interior of the van to see if a bullet struck the inside of the van, but he did not locate a bullet or a bullet strike. The hole was too small to determine the possible trajectory of any bullet that may have caused the hole because the trajectory rods available to Detective Gastrow were too large. However, Detective Gastrow testified that he was not convinced, based on his

experience, that the hole was caused by a bullet because the hole was very small, about an eighth of an inch wide, and it wasn't circular as he would expect a bullet hole to be.

¶ 13.   On January 28, 2007, after police had finished examining the van for evidence, the status of the van was changed from "evidence" to "safekeeping." Pursuant to statute, the department sent two notices to Munford, as the registered owner of the vehicle, at the address at which the van was registered, that the van could be picked up and taken away upon payment of the tow and storage fees, or if the vehicle was not removed, it would be sold at auction. Munford did not receive the notices because he was in custody at the Milwaukee County Jail. The vehicle was auctioned off on April 3, 2007, to Miller Compressing Company who crushed the vehicle for scrap value.

¶ 14.   On November 30, 2007, Munford's counsel and Gregory Martin, a criminologist hired by the defense, met with Milwaukee police to review the physical evidence in the case. It was at that time the defense was informed that the van had been destroyed.

¶ 15.   Thereafter, on December 4, 2007, Munford filed a motion to dismiss due to the destruction of evidence. A hearing was held on March 20 and 25, 2008, at which Martin (the defense's criminology expert) and Detective Gastrow (who had examined the van) both testified. Following the hearing, the trial court denied the motion to dismiss finding that:   (1) Detective Gastrow had thoroughly examined the van; (2) Munford had access to Detective Gastrow's report and pictures of the van, and therefore had comparable evidence; (3) the State followed statutory procedures before destroying the van; and (4) the State did not act in bad faith.

¶ 16.   On September 2, 2008, the case proceeded to trial. During the trial, Munford wanted to ask Detective Gastrow and the identification technicians questions, the answers to which would inform the jury that the State destroyed the van before Martin could examine it. Munford argued that the questions were relevant and necessary to bolster Martin's credibility, as the answers to the questions would explain why Martin was unable to perform a full evaluation of the evidence. Further, Munford believed that the State's destruction of the van revealed that the State's investigation was "lack luster" and "shoddy." The trial court disagreed and found the questions regarding *who* destroyed the van to be irrelevant, but did permit the jury to hear evidence that the van was destroyed in April 2007.

¶ 17.   During the trial, Munford's defense was that another shooter, standing on the passenger's side of the van and shooting through the van, fired the shots that killed Pendleton. Regardless, after hearing the evidence, the jury found Munford guilty of first-degree intentional homicide, and he was sentenced to life in prison with eligibility for extended supervision after forty years. Munford now appeals.

## DISCUSSION

¶ 18.   Munford argues that:   (1) his due process rights were violated when the State destroyed the van before Munford's expert was able to examine it; and (2) the trial court abused its discretion when it prohibited Munford from telling the jury that the State destroyed the van. We address each contention in turn.

## I.   Due Process

¶ 19.   Munford first contends that his due process rights were violated when the State destroyed his van

before his criminology expert, Martin, was able to examine it. More specifically, Munford contends that the van's purported exculpatory value should have been apparent to the State at the time the van was destroyed and that Martin was unable to obtain comparable evidence by reasonable means. We disagree.

¶ 20. "[T]he due process clause of the Fourteenth Amendment to the United States Constitution imposes a duty on the State to preserve exculpatory evidence." *State v. Greenwold*, 181 Wis. 2d 881, 885, 512 N.W.2d 237 (Ct. App. 1994) (*Greenwold I*). The State's destruction of evidence violates a defendant's due process rights "if the police: (1) failed to preserve . . . evidence that is apparently exculpatory; or (2) acted in bad faith by failing to preserve evidence which is potentially exculpatory." *State v. Greenwold*, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994) (*Greenwold II*). Admitting the "difficulty of determining bad faith," Munford only argues that the State failed to preserve apparently exculpatory evidence. When reviewing a claim that evidence was lost or destroyed in violation of due process, we independently apply the constitutional standard to the facts as found by the trial court. *Id.* at 66–67.

¶ 21. In order to establish that the State violated his due process rights by destroying apparently exculpatory evidence, namely, the van, Munford must demonstrate that: (1) the evidence destroyed "possess[ed] an exculpatory value that was apparent to those who had custody of the evidence . . . before the evidence was destroyed," and (2) the evidence is "of such a nature that the defendant [is] unable to obtain comparable evidence by other reasonably available means." *State v. Oinas*,

125 Wis. 2d 487, 490, 373 N.W.2d 463 (Ct. App. 1985) (emphasis omitted). Because Munford has failed to establish that the van's exculpatory value was apparent at the time the van was destroyed, we need not determine whether the reports and photographs taken of the State's examination of the van amount to satisfactory comparable evidence.

¶ 22. To begin, Munford contends "that the [S]tate should have realized the apparent exculpatory nature of the van evidence because the [S]tate should have realized the importance of a possible bullet hole in the window of the van, and the importance of whether a bullet was possibly lodged in the van." Presumably, Munford argues such evidence would be important because it would support his theory that the four shots that killed Pendleton were fired by a gunman standing outside the passenger's side of the van and shooting through the van. But we conclude that the limited exculpatory value of such evidence was not apparent at the time the van was destroyed.

¶ 23. First and foremost, Munford's argument ignores the trial court's finding that Detective Gastrow thoroughly examined the van and did not find a bullet or a bullet strike. Munford does not challenge this finding and provides no evidence or even a reasonable inference from the evidence to support his theory that a bullet remains lodged inside the interior of the van. And although Munford's expert was unable to physically examine the van, he was provided with thirty-two photos of the van from which such inferences could be obtained, and yet he found nothing. The mere possibility that a bullet remains lodged inside the van—after Detective Gastrow thoroughly examined the van and specifically looked for just such a bullet or bullet

strike—does not support Munford's argument that the van's purported exculpatory value was apparent.

¶ 24. Moreover, Detective Gastrow did not act unreasonably in concluding, based on his experience, that the oval-shaped hole in the passenger's side window of the van was unlikely a bullet hole. Based on Detective Gastrow's experience, the shape and size of the hole did not comport with what he would expect to see if the hole had been created by a bullet. Detective Gastrow's conclusion that the hole was unlikely caused by a bullet was bolstered when he failed to locate a bullet strike or bullet inside the van to correspond with the hole, and by the multiple witnesses at the scene of the crime, none of whom saw an individual with a gun on the passenger's side of the van.

■

¶ 25. In short, Munford has not demonstrated that the van's purported exculpatory value should have been apparent at the time the van was destroyed. Following a thorough examination, Detective Gastrow did not locate a bullet or bullet strike in the interior of the van and he reasonably concluded that the hole in the passenger's side window was not created by a bullet. At best, the van was merely potentially exculpatory, and Munford does not argue that the State destroyed the van in bad faith. *See Greenwold II*, 189 Wis. 2d at 67 (requiring a defendant demonstrate bad faith when "potentially exculpatory" evidence is destroyed). The State did not violate Munford's due process rights when it destroyed the van.

## II. Abuse of Discretion

¶ 26. Munford also argues that the trial court abused its discretion when it prohibited Munford from

telling the jury *who* destroyed the van and *why* the van was destroyed. Munford contends that:

> it was of absolute importance for the jury to know that Martin [Munford's criminology expert] had done everything within his power to thoroughly examine the evidence. Instead, due to the trial court's ruling, the jury was left with the unanswered question of why the vehicle had been destroyed, and therefore, who was responsible for . . . Martin's inability to thoroughly examine the evidence.

Munford further argues that the fact that the State destroyed the van was important to his defense because it harmed Detective Gastrow's credibility, purportedly demonstrating that Detective Gastrow failed to ensure that the van was properly preserved. We disagree.

■

¶ 27.   "Evidentiary rulings are generally reviewed with deference to determine whether the [trial] court properly exercised its discretion in accordance with the facts and accepted legal standards." *State v. Tucker*, 2003 WI 12, ¶ 28, 259 Wis. 2d 484, 657 N.W.2d 374. To properly exercise discretion, a trial court should "delineate, with sufficient detail, the factors that influenced its decision." *State v. Hunt*, 2003 WI 81, ¶ 44, 263 Wis. 2d 1, 666 N.W.2d 771. "We will uphold the trial court's evidentiary rulings if it 'examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach.' " *State v. Mercer*, 2010 WI App 47, ¶ 43, 324 Wis. 2d 506, 782 N.W.2d 125 (citation omitted).

■

¶ 28.   Evidentiary rulings must also comport with a criminal defendant's constitutional right to present a

defense. *See State v. Campbell*, 2006 WI 99, ¶ 33, 294 Wis. 2d 100, 718 N.W.2d 649. "The Sixth Amendment and Due Process Clause right to present a defense requires that a defendant be allowed to introduce relevant evidence, subject to reasonable restrictions." *Id.* (emphasis omitted). However, " '[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under the standard rule of evidence.' " *State v. Muckerheide*, 2007 WI 5, ¶ 40, 298 Wis. 2d 553, 725 N.W.2d 930 (citation omitted). Whether an evidentiary ruling infringes upon a criminal defendant's right to present a defense is a question of constitutional fact for independent review. *Tucker*, 259 Wis. 2d 484, ¶ 28.

¶ 29. The trial court summarized its evidentiary ruling as follows:

> So I think given the fact you will be able to examine [Detective Gastrow] . . ., you have photographs of the van, the measurements that [Detective Gastrow] took, he'll be available, you have your expert available, there should be no mention why the van was destroyed, no allegation there was improper conduct. The Court has already heard that.
>
> . . . .
>
> The relevance is substantially outweighed by substantial probability of confusion and misleading of the issues, so . . . all that can be referenced is the fact that the van was taken into inventory and in due course it was scrapped in April of 2007.

¶ 30. The trial court took note that the jury could be informed that the State had custody of the van and that the van was destroyed in April 2007, ostensibly before the defense hired Martin. The jury could reasonably infer from that information that the State de-

stroyed the van. Further, the trial court only prohibited Munford from revealing who destroyed the van and why the van was destroyed, thereby keeping its ruling very narrow. The trial court determined that alternative means were available to attack Detective Gastrow's credibility, noting that if Munford wished to demonstrate that Detective Gastrow's examination of the van was incomplete, he was free to question him on cross examination about his thoroughness in examining the van and was free to question Martin about what additional examination he thought Detective Gastrow should have conducted. Such considerations are proper under WIS. STAT. § 904.03 (2007–08)[1] (stating that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence").

¶ 31.   By balancing the minimal probative value of Munford's proffered evidence against the danger that the information would lead to confusion or be misleading, the trial court " 'examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach.' " *See Mercer*, 324 Wis. 2d 506, ¶ 43 (citation omitted).

¶ 32.   Moreover, even if we momentarily accepted as true Munford's argument that the trial court erred in prohibiting him from telling the jury that the State destroyed the van and why the State destroyed it, he cannot receive the relief he seeks (a new trial) because

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

the error is harmless. *State v. Britt*, 203 Wis. 2d 25, 41, 553 N.W.2d 528 (Ct. App. 1996) ("An evidentiary error is subject to a harmless error analysis and requires reversal or a new trial only if the improper admission of evidence has affected the substantial rights of the party seeking relief."). The trial court only prohibited Munford from presenting to the jury evidence regarding who destroyed the van and why the van was destroyed. The jury was informed that the State had custody of the van and that the van was destroyed in April 2007. The probative value of the circumstances surrounding the destruction of the van was minimal at best and the evidence against Munford was overwhelming—multiple witnesses at the scene heard Munford threaten Pendleton and identified him as the shooter, and none of the witnesses identified another individual with a gun at the scene. The purported error is harmless, and Munford is not entitled to a new trial.

*By the Court.*—Judgment affirmed.