COURT OF APPEALS
DECISION
DATED AND FILED

October 15, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1059-CR**

Cir. Ct. No. **2014CF3814**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RICHARD W. LITTLEJOHN, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: JONATHAN D. WATTS, Judge. *Affirmed.*

Before Brash, P.J., Kloppenburg and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Richard W. Littlejohn, Jr., appeals from a judgment, entered upon a jury's verdict, convicting him on two counts of first-

degree intentional homicide. Littlejohn argues that the trial court violated his right to present a defense when it excluded a witness from testifying. We conclude that the trial court did not erroneously exercise its discretion in excluding the witness's testimony, nor did the witness's exclusion violate Littlejohn's rights. Therefore, we affirm the judgment.

## BACKGROUND

¶2 Littlejohn was charged with two counts of first-degree intentional homicide as a party to a crime with use of a dangerous weapon for the April 2014 shooting deaths of Willie Shankle and Darius Parker. Shankle's girlfriend, Leslie McCloud, testified at trial that she was at Shankle's apartment with him and Parker on the evening of April 21, 2014, when the doorbell rang. Shankle let a young man, whom McCloud had never met, into the apartment. The man pulled a handgun out of a duffle bag, and it became apparent to McCloud that Shankle was interested in buying the weapon. The gun was passed around the room; eventually, the man reached for the gun and said, "Let me make sure the safety is on." He took the gun, removed the safety, and fired multiple shots into Shankle. Parker ran into a bedroom, but the man followed and shot Parker multiple times before fleeing the apartment. Shankle and Parker were both deceased by the time police arrived. McCloud did not know the shooter's name, but identified Littlejohn as the shooter in a lineup and at trial.

¶3 A friend of Littlejohn's, Kenneth Wright, also testified at trial. He said that Littlejohn had asked him for a ride on April 21, 2014. As Wright drove Littlejohn to his destination, Littlejohn said he was going to rob a guy in an apartment building. Wright claimed he talked Littlejohn out of the robbery and drove him back to where he had been picked up. Later that day, a friend of

Littlejohn told Wright that he had seen Littlejohn near the address of the guy whom Littlejohn had planned to rob. Wright drove to the area; after a few minutes, he heard gunshots from an apartment building. He started to drive away and heard a whistle. It was Littlejohn, who jumped into Wright's back seat. He told Wright to "go, go, go," then said, "They almost got me. Yeah, I had to shoot them. I had to kill them." Wright dropped Littlejohn off four to five blocks away. The State later charged Wright with harboring or aiding a felon.

¶4 Wright did not immediately report the homicides. While in jail for a bond violation based on a failed drug test, and upon learning that Shankle was "a cousin of [his] children," Wright decided to provide information. He identified Littlejohn from a photo array. At trial, Wright admitted that when he offered the information, he asked if he would receive a reward, but he did not receive reward money or a favorable plea deal. He also admitted that he was a cocaine addict.

¶5 After the State rested, Littlejohn's attorney indicated that he wanted to call Littlejohn's grandmother's boyfriend, Larry Kyles, as a witness. The State objected because Kyles had not been on the witness list and calling him after he had been present in the courtroom during testimony would violate the witness sequestration order imposed earlier in the trial. Defense counsel made an offer of proof, after which the trial court denied Littlejohn's request to call Kyles. Littlejohn did, however, call his mother, his grandmother, and his grandmother's neighbor as alibi witnesses.

¶6 The jury convicted Littlejohn on both counts of first-degree intentional homicide. The trial court imposed concurrent life sentences with eligibility for extended supervision after fifty years. Littlejohn appeals. Additional facts will be discussed below.

## DISCUSSION

¶7      The sole issue Littlejohn raises on appeal is his complaint that excluding Kyles as a witness violated "the evidence code" and his right to present a defense.[1]

### I. The Rules of Evidence

¶8      At the request of a party, the trial court shall, or on its own motion may, "order witnesses excluded so that they cannot hear the testimony of other witnesses."  *See* WIS. STAT. § 906.15(1) (2017-18).[2]  "The purpose of sequestration is to assure a fair trial—specifically, to prevent a witness from 'shaping his [or her] testimony' based on the testimony of other witnesses." ***State v. Evans***, 2000 WI App 178, ¶6, 238 Wis. 2d 411, 617 N.W.2d 220 (citation omitted, brackets in ***Evans***).

¶9      "Sequestration of witnesses is within the discretion of the trial court."  ***Id.***, ¶7.  Similarly, trial courts "determine the scope of a sequestration order within the exercise of their discretion."  ***State v. Copeland***, 2011 WI App 28, ¶8, 332 Wis. 2d 283, 798 N.W.2d 250.  "To properly exercise discretion, a trial court should 'delineate, with sufficient detail, the factors that influenced its decision.'"  ***State v. Munford***, 2010 WI App 168, ¶27, 330 Wis. 2d 575, 794 N.W.2d 264 (citation omitted).  "[O]ur review of discretionary determinations is

---

[1] The State asserts that Littlejohn forfeited the claim that he was deprived of his right to present a defense by failing to raise it earlier.  However, the trial court told defense counsel that it "recognize[d] your client's right to present a defense," so we decline to invoke forfeiture in this case.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.  The 2013-14 version of WIS. STAT. § 906.15(1) is identical to the 2017-18 version.

deferential[.]" ***Evans***, 238 Wis. 2d 411, ¶7. We simply examine the record to determine whether the trial court "reached a reasonable conclusion based on proper legal standards and a logical interpretation of the facts." *See **id.***

¶10 At the beginning of voir dire, Littlejohn identified his mother and grandmother as witnesses who were in court for jury selection, and defense counsel indicated that he had instructed them to leave once the State began its opening statement. The State commented that, with the exception of its court officer, it believed all other witnesses should leave the courtroom after they had been introduced to the jury. The trial court ordered "sequestration of all witnesses," stating:

> [A]s soon as we're done with those introductions and the announcement of any potential witnesses, they should leave the courtroom and be sequestered.
>
> And sequester not only means that they not hear other witness's [sic] testimony, but they're not to talk about anyone's testimony, either their own or others, at any time during the trial, so even after they're done testifying; so the sequestration has this overlaying blanket really of not communicating about or what the testimony was.

¶11 Kyles, who had been in the courtroom for Wright's testimony, claimed to defense counsel during a lunch break that Wright "admitted to him that his motivation here was to get money." Kyles would also have testified that Wright "when he has money is a daily crack cocaine user." Wright allegedly also told Kyles that Littlejohn "was chosen as the target of this effort to get money because they thought he was 16 or 17 years of age. And, therefore, based on how the legal system works, he would be in a position to handle it." As noted, the State objected. Among other things, it noted that Kyles should have been known to the defense—he was not some random citizen who "walked in off the street."

¶12 The trial court explained that while it acknowledged Littlejohn's right to present a defense, "this goes too far." There was already evidence in the record that Wright was motivated to get money and that he was a cocaine user, so Kyles' testimony on those points would have been cumulative. The trial court also noted that there was nothing else in the record "that talks about anyone arbitrarily selecting [Littlejohn] as a person to pin these homicides on." Further, a belief that Littlejohn would have been subject to juvenile court jurisdiction for the homicides was "woefully ignorant"[3] and "not probative of anything." Ultimately, the trial court stated, "The court's primary concern is the fact that Mr. Kyles' testimony is tainted, would be highly suspect, not only a violation of the court order but just not reliable based on the circumstances that have been outlined by the attorneys."

¶13 On appeal, Littlejohn does not discuss any of the trial court's reasoning, much less how any of it constitutes an erroneous exercise of discretion.[4] Rather, he contends that, under *United States v. Shurn*, 849 F.2d 1090, 1094 (8th Cir. 1988), Kyles' testimony should have been allowed because it was "simply impeaching."

¶14 In *Shurn*, detectives in St. Louis, Missouri, executed a search warrant at a residence. *See id.* at 1092. The detective who was first inside saw Jeanne Navies run from the hallway and down some steps. *See id.* Charles Shurn

---

[3] Courts of criminal jurisdiction—that is, "adult courts"—have "exclusive original jurisdiction" over any juvenile who is alleged to have committed first-degree intentional homicide contrary to WIS. STAT. § 940.01 "on or after the juvenile's 10th birthday." *See* WIS. STAT. § 938.183(1)(am).

[4] Littlejohn asserts, without further argument, that "the sequestration order here was not violated since the witness never testified." The significance of this assertion is unclear, as avoiding a violation of the sequestration order was the precise reason why Kyles was not allowed to testify.

was found in a bedroom, kneeling near a gun, along with drugs and considerable drug paraphernalia. *See id.* Shurn was charged with one count of possession with intent to distribute heroin. *See id.*

¶15 Navies was arrested as a material witness and placed in the U.S. Marshal's Witness Security Program after agreeing to testify for the government. *See id.* at 1094. Thus, when she testified, several detectives, including Larry Wheeler, were in the courtroom. *See id.* at 1093-94. However, some of Navies' testimony was different from her earlier statements. *See id.* at 1094. Wheeler was called in rebuttal to impeach Navies; prior to her inconsistent testimony, the government had not intended to call him. *See id.*

¶16 *Shurn* did not expressly hold that a witness may be allowed to testify despite a sequestration order if that witness has testimony that is "simply impeaching." First, the Eighth Circuit Court of Appeals concluded that the purposes of a sequestration order—to prevent witnesses from tailoring their testimony and to help detect less than candid testimony—were not applicable to the facts in that case. *See id.* Second, the Court of Appeals determined that Wheeler's testimony "was not cumulative, but simply impeaching." *Id.* Moreover, the Court of Appeals noted that "[t]he trial court is given broad discretion in the interpretation of" the Federal Rules of Evidence. *See id.*

¶17 Here, Kyles' testimony is precisely the type of unreliable, crafted-after-the-fact testimony that a sequestration order seeks to prevent. Though offered as impeachment evidence, Kyles' testimony would have been cumulative, unreliable, and non-probative. *Shurn* does not authorize or require admission of Kyles' testimony, and Littlejohn has not otherwise challenged the trial court's exercise of discretion in excluding Kyles' testimony. We discern no erroneous

exercise of that discretion, as the trial court clearly explained what factors it was considering and why it was excluding Kyles as a witness, which was a reasonable and logical conclusion under the facts of this case.

## II. The Right to Present a Defense

¶18     "Evidentiary rulings must also comport with a criminal defendant's constitutional right to present a defense." *Munford*, 330 Wis. 2d 575, ¶28. However, "[a] defendant's right to present a defense is not absolute." *State v. Campbell*, 2006 WI 99, ¶33, 294 Wis. 2d 100, 718 N.W.2d 649. The defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible[.]" *See Munford*, 330 Wis. 2d 575, ¶28 (citations and quotation marks omitted).

¶19     Further, the constitution does not guarantee a particular defense; rather, "[t]he right to present a defense means that a defendant must be afforded a meaningful opportunity to present a complete defense, including the right to call, confront and cross-examine witnesses." *State v. Smet*, 2005 WI App 263, ¶25, 288 Wis. 2d 525, 709 N.W.2d 474. "Whether an evidentiary ruling infringes upon a criminal defendant's right to present a defense is a question of constitutional fact for independent review." *Munford*, 330 Wis. 2d 575, ¶28.

¶20     In this case, Littlejohn had the opportunity to call multiple alibi witnesses. He was afforded the opportunity to cross-examine the State's witnesses, including Wright. Thus, he had the opportunity to ask Wright about his motivation for monetary gain by reporting Littlejohn and about his drug habits. Calling Kyles would have added only cumulative, non-probative testimony, which

is excludable under WIS. STAT. § 904.03[5] even if it were not excludable under the sequestration order. We are, therefore, unpersuaded that the refusal to allow Littlejohn to call Kyles deprived him of the right to present a defense.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by … considerations of undue delay, waste of time, or needless presentation of cumulative evidence." WIS. STAT. § 904.03.