COURT OF APPEALS
DECISION
DATED AND FILED

April 21, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP365-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2018CF17

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRIAN K. LARSON, II,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dodge County:  MARTIN J. DE VRIES, Judge.  *Affirmed*.

Before Fitzpatrick, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Brian K. Larson, II, appeals a judgment of conviction, following a jury trial, for first-degree reckless homicide by delivery of heroin and felony bail jumping and an order denying his postconviction motion without a hearing. Larson argues that the evidence at trial was insufficient to sustain the convictions. Larson also argues that he was entitled to a hearing on his claims that his trial counsel was ineffective for not pursuing a third-party defense at trial, and for not pursuing an argument and a jury instruction for the jury to consider law enforcement's failure to collect and preserve surveillance videotapes in determining Larson's guilt. For the reasons set forth in this opinion, we reject Larson's arguments and affirm.

¶2     Dakoda Kline died at a cemetery on the evening of April 8 or the morning of April 9, 2017, as a result of a heroin overdose. Based on Dakoda Kline's death, Larson was charged with first-degree reckless homicide by delivery of heroin and felony bail jumping. Larson was also charged with two counts of delivery of heroin and felony bail jumping based on controlled buys that took place in March 2015 and May 2017. The case proceeded to trial, and the jury returned guilty verdicts for the homicide count and the bail jumping count from April 2017.[1]

¶3     Larson filed a postconviction motion claiming that his trial counsel was ineffective. He argued that his counsel should have sought to present a third-party defense under *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984). Specifically, he argues that counsel should have pursued a defense that one

_____

[1] The jury returned not guilty verdicts for the remaining bail jumping counts and the delivery of heroin count from May 2017, and the delivery of heroin count from March 2015 was dismissed.

of three other individuals, including Dakoda's cousin, Zachary Kline, may have provided the heroin that killed Dakoda.[2] Larson also argued that his trial counsel should have pursued an argument and a jury instruction for the jury to consider that law enforcement failed to collect and preserve surveillance videotapes of the bowling alley where Dakoda was bowling with Zachary on April 8, 2017, in determining whether Larson provided the heroin to Dakoda that caused his overdose.

¶4      The circuit court determined that Larson did not sufficiently allege prejudice from any deficient performance by his trial counsel to warrant an evidentiary hearing.  The court found that there was persuasive evidence at trial, including text messages between Dakoda and Larson, establishing that Larson had sold heroin to Dakoda on the afternoon before Dakoda's death.  The court determined that Larson's claim that someone else may have supplied the heroin to Dakoda was conclusory.  The court also determined that Larson did not sufficiently allege any deficient performance by his counsel at trial, finding that defense counsel had vigorously litigated the case.  The court therefore denied the motion without a hearing.  Larson appeals.

¶5      As noted, Larson argues that the evidence at trial was insufficient to sustain the jury verdicts.  We review de novo whether the evidence at trial was sufficient to support a conviction beyond a reasonable doubt.  *See* *State v. Booker*, 2006 WI 79, ¶12, 292 Wis. 2d 43, 717 N.W.2d 676.  We will reverse for insufficient evidence only if "the evidence, viewed most favorably to the [S]tate

_____

[2] Hereinafter, we refer to Dakoda Kline and Zachary Kline by their first names for clarity because they share a surname.

and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). We review the sufficiency of the evidence under the same standard whether the evidence against the defendant was direct or circumstantial. *Id.* at 501.

¶6 Larson contends that there was no direct evidence tying him to the delivery of the heroin, such as a witness, a recorded statement documenting the sale of heroin between Larson and Dakoda, or forensic evidence connecting Larson to the heroin that caused Dakoda's overdose. He also contends that the text messages between Larson and Dakoda were too vague to establish that Larson actually supplied the heroin that caused Dakoda's death, and that cellular phone evidence placing them both in the area of the bowling alley was merely circumstantial and insufficient to establish Larson's guilt. Larson also points out that there was no evidence at trial that Larson and Dakoda actually met after texting about meeting while Dakoda was at the bowling alley. Larson contends that any inference that he delivered the heroin to Dakoda was purely speculative and incredible as a matter of law.

¶7 The State responds that the evidence at trial was sufficient to sustain the jury verdicts. It points to the following evidence from trial. Dakoda withdrew a total of $240 from three ATMs on April 8, 2019. Dakoda's fiancée testified that that amount was consistent with amounts Dakoda had withdrawn in the past to purchase heroin. When Dakoda was found after the fatal overdose, he had only $21 left in his wallet. Dakoda's fiancée identified Larson as one of several individuals who had sold heroin to Larson in the past. Text messages between Larson and Dakoda throughout the day on April 8, 2017, indicated an intent to meet, including a final text from Larson to Dakoda that read, "Ready when you are

4

and it is really good stuff bro." Larson and Dakoda also called each other multiple times on the afternoon of April 8, 2017, and for the last calls between them, Larson and Dakoda's phones were both using the same cellular tower near the bowling alley.

¶8 We conclude that the evidence was sufficient to sustain the convictions. Although the evidence against Larson was largely circumstantial, it was not so lacking in probative value that no reasonable fact finder could have found guilt beyond a reasonable doubt. In light of the evidence that Larson had sold heroin to Dakoda in the past, the jury could have reasonably drawn the inference that the texts between Larson and Dakoda on April 8, 2017, ending with Larson's text to Dakoda stating, "Ready when you are and it's really good stuff bro," indicated that Larson and Dakoda were arranging for Dakoda to purchase heroin from Larson. The jury could have also reasonably inferred that Dakoda and Larson met and accomplished the heroin sale based on Dakoda's withdrawal of $240 from ATMs that day, the phone calls between Dakoda and Larson using the same cell phone tower near the bowling alley, Dakoda's subsequent death by heroin overdose, and the fact that Dakoda had only $21 left in his possession at the time of his death. *See **Poellinger***, 153 Wis. 2d at 507 (jury entitled to draw reasonable inferences from the evidence).

¶9 Larson next argues that his trial counsel was ineffective by failing to pursue a ***Denny*** motion seeking to present evidence that Dakoda's cousin,

Zachary, provided the heroin that caused Dakoda's fatal overdose.[3] A defendant has the right "to present evidence that a third party committed the crime for which the defendant is being tried" if the defendant shows "'a legitimate tendency' that the third party committed the crime; in other words, that the third party had motive, opportunity, and a direct connection to the crime." *State v. Wilson*, 2015 WI 48, ¶3, 362 Wis. 2d 193, 864 N.W.2d 52 (quoting *Denny*, 120 Wis. 2d at 623-25). A *Denny* motion requires a showing that there is "'evidence that the alleged third-party perpetrator actually committed the crime.'" *State v. Griffin*, 2019 WI App 49, ¶8, 388 Wis. 2d 581, 933 N.W.2d 681 (quoting *Wilson*, 362 Wis. 2d 193, ¶58). The proffered evidence is considered together with all other evidence "to determine whether, under the totality of the circumstances, the evidence suggests that a third-party perpetrator *actually committed* the crime." *Wilson*, 362 Wis. 2d 193, ¶71. Thus, to succeed, a *Denny* motion must show "some direct connection between the third party and the *perpetration* of the crime." *Id.* Whether the defendant had the right to present a third-party defense and whether the facts in a postconviction motion were sufficient to require an evidentiary hearing are both questions of law that we review de novo. *See Griffin*, 388 Wis. 2d 581, ¶6; *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

---

[3] In his postconviction motion and in his brief-in-chief, Larson argued that there were also two other named individuals who may have provided the heroin to Dakoda. However, in his reply brief, Larson pursues this argument only as to Zachary, effectively conceding the State's arguments that trial counsel was not ineffective for failing to pursue a motion under *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984), as to the other two individuals. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

¶10 Larson argued in his postconviction motion that his trial counsel should have sought to introduce evidence that Zachary, not Larson, provided the heroin to Dakoda, based on the following: (1) Zachary and Dakoda worked and went to bars together in the days leading up to Dakoda's death; (2) Zachary had loaned Dakoda $40 during that time; (3) Zachary and Dakoda were together at the bowling alley on April 8, 2017, drinking alcohol and smoking marijuana, before Dakoda left and went to the cemetery where he overdosed; and (4) Zachary was a heroin addict who was also actively using heroin around the time of Dakoda's death. Larson argues that he alleged sufficient facts in his postconviction motion to require the circuit court to hold an evidentiary hearing. *See Allen*, 274 Wis. 2d 568, ¶¶9, 26-27 (postconviction motion claiming ineffective assistance of counsel must allege facts to show that counsel performed deficiently and the deficient performance prejudiced the defense; if the motion "on its face alleges sufficient material facts that, if true, would entitle the defendant to relief … the circuit court must hold an evidentiary hearing" on the motion).

¶11 The State responds that Larson failed to sufficiently allege ineffective assistance of counsel. It asserts that counsel is not ineffective by failing to bring a motion that would have been denied. *See State v. Jackson*, 229 Wis. 2d 328, 344, 600 N.W.2d 39 (Ct. App 1999). It argues that, to warrant an evidentiary hearing, Larson was required to allege sufficient facts to show that a *Denny* motion would have been successful, and that he failed to do so because he failed to show a direct connection between Zachary and the delivery of heroin to Dakoda. *See id.* (claim that counsel was ineffective by failing to pursue a motion must show "that such a motion would have been successful").

¶12 We conclude that the facts alleged in the postconviction motion did not establish that counsel was ineffective by failing to pursue a *Denny* motion

because the facts did not show a direct connection between Zachary and the perpetration of the crime. Zachary's activities with Dakoda in the days leading up to Dakoda's death and his presence at the bowling alley with Dakoda on April 8, 2017, do not amount to a direct connection to the crime. *See Wilson*, 362 N.W.2d 193, ¶72 ("Mere presence at the crime scene or acquaintance with the victim … is not normally enough to establish direct connection."). Further, Zachary's heroin addiction and lending Dakoda $40 in the days before Dakoda's death do not establish a direct connection to Dakoda's obtaining heroin on April 8, 2017. Nothing in the postconviction motion alleged that Zachary had provided heroin to Dakoda in the past, or any other facts directly or indirectly linking Zachary to Dakoda's purchase of heroin. We therefore conclude that Larson's postconviction motion did not show that a *Denny* motion would have been successful, and thus that he failed to allege sufficient facts to require an evidentiary hearing. *See Allen*, 274 Wis. 2d 568, ¶9; *Jackson*, 229 Wis. 2d at 344.

¶13 Finally, Larson contends that his trial counsel was ineffective for not pursuing an argument and a jury instruction for the jury to consider that law enforcement failed their duty to collect and preserve surveillance videotapes covering the bowling alley and portions of its parking lot on April 8, 2017. Generally speaking, "a defendant's due process rights regarding the destruction of evidence are violated if the State (1) fails to preserve evidence that is apparently exculpatory or (2) acts in bad faith by failing to preserve evidence that is potentially exculpatory." *State v. Luedtke*, 2015 WI 42, ¶53, 362 Wis. 2d 1, 863 NW.2d 592 (citing *State v. Greenwold*, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994)).

¶14 Larson contends that the surveillance videotapes were apparently exculpatory because they would have proven that Larson did not deliver heroin to

Dakoda at the bowling alley, and that law enforcement therefore had a duty to collect and preserve the surveillance videotapes before they were destroyed by third parties. *See State v. Hugget*, 2010 WI App 69, ¶20, 324 Wis. 2d 786, 783 N.W.2d 675 ("It is irrelevant … whether the State affirmatively destroyed evidence or passively allowed it to be destroyed…. In either event, the State failed in its duty to preserve evidence."); *State v. Hahn*, 132 Wis. 2d 351, 361, 392 N.W.2d 464 (Ct. App. 1986) ("[T]he nature of the destroyed evidence, not the degree of the state's culpability, determines whether defendant's right to due process has been violated."). Larson argues that his counsel's closing argument that there was no videotape available to prove that Larson delivered the heroin to Dakoda rang hollow without an argument and instruction that surveillance videotapes would have proven Larson's innocence but that law enforcement failed to collect and preserve them. Larson argues that, had his counsel requested such an instruction, the circuit court would have been required to instruct the jury to consider law enforcement's failure to collect and preserve the surveillance videotape in reaching its verdict. He argues that his postconviction motion set forth sufficient facts to require an evidentiary hearing on this claim. *See Allen*, 274 Wis. 2d 568, ¶9.

¶15　The State responds that Larson's postconviction motion did not establish his counsel was ineffective in connection with the surveillance videotapes because police are not required to collect all evidence that might be exculpatory. *See State v. Smith*, 125 Wis. 2d 111, 130, 370 N.W.2d 827 (Ct. App. 1985), *rev'd on other grounds*, 131 Wis. 2d 220, 388 N.W.2d 601 (1986). The State argues that Larson's reliance on *Huggett* and *Hahn* is misplaced because, in those cases, police had possession of evidence and then failed to prevent it from being destroyed by third parties; here, by contrast, police never had possession of

the surveillance videotapes. The State argues that Larson has not cited any law establishing a duty by law enforcement to collect any particular evidence. The State also argues that Larson has failed to demonstrate that the videotapes were apparently exculpatory, such that law enforcement would have had any duty to preserve them even if they were in their possession. *See Greenwold*, 189 Wis. 2d at 67-68.

¶16     We conclude that the postconviction motion did not allege sufficient facts that, if true, would entitle Larson to relief. *See Allen*, 274 Wis. 2d 568, ¶9. As the State notes, nothing in the motion alleges that law enforcement ever had possession of the surveillance videotapes. Rather, Larson's argument is that law enforcement failed to collect and inspect the surveillance videotapes before they were destroyed. We have previously "decline[d] to hold that a defendant's right to due process includes a requirement that the [S]tate collect all evidence which might possibly turn out to be exculpatory." *See Smith*, 125 Wis. 2d at 130. However, even if Larson could base a due process argument on evidence that was never in the State's possession, Larson's claim would fail for reasons we now explain.

¶17     The facts in Larson's postconviction motion do not establish that the surveillance videotapes were apparently exculpatory. *See State v. Munford*, 2010 WI App 168, ¶21, 330 Wis. 2d 575, 794 N.W.2d 264 (evidence was "apparently exculpatory" if it "possessed an exculpatory value that was apparent to those who had custody of the evidence before the evidence was destroyed."). Larson's motion asserts that surveillance videotapes covered the bowling alley and parts of its parking lot on April 8, 2017, and that Larson was never in the vicinity of the bowling alley on that day. Larson assumes that the surveillance videotapes would have covered all areas surrounding the bowling alley and that Dakoda must have

obtained the heroin in an area the surveillance videotapes would have covered, but the facts in the motion do not support those assumptions. Therefore, nothing in the motion establishes that the surveillance videotapes would have had an exculpatory value that would have been apparent to law enforcement before the videotapes were destroyed. At best, Larson's motion establishes only that video surveillance is potentially exculpatory, but he makes no argument that law enforcement acted in bad faith by allowing the evidence to be destroyed. *See id.*, ¶25 (defendant must demonstrate bad faith when potentially exculpatory evidence is destroyed). Therefore, the facts alleged in Larson's postconviction motion did not show that counsel performed deficiently in this regard, and the circuit court was not required to hold an evidentiary hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).