COURT OF APPEALS
DECISION
DATED AND FILED

December 11, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP737-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF466

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JEFFREY A. ROTH,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: FREDERICK J. STRAMPE, Judge. *Affirmed*.

¶1 GUNDRUM, P.J.[1] Jeffrey A. Roth appeals from a judgment of conviction entered after a jury trial. He contends the circuit court erred in denying

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

his motion to dismiss the charges against him based on the destruction of evidence. For the following reasons, we affirm.

## *Background*

¶2 Three City of Oconomowoc police officers—Sergeant[2] Bradley Timm and Officers John Resch and Mitchell Karleski[3]—responded to a citizen report of a suspicious person who had been stumbling around and was sitting in a vehicle on Riverdale Drive in the city. Once at the vehicle, the officers engaged with Roth, which engagement led to Roth being charged with battery or threat to an officer, possession of marijuana, possession of drug paraphernalia, resisting an officer, and misdemeanor bail jumping. Roth filed a motion to dismiss the charges due to alleged destruction of evidence—squad and body camera footage. The circuit court held a hearing on the motion at which all three responding officers testified.[4]

¶3 Timm testified that he responded to the scene without first inspecting his body or squad cameras to ensure their proper functioning because he was in the middle of training near the start of his shift when the citizen report came in and he needed to quickly respond to the scene. Timm further explained that the department had been having "major issues" with the squad and body

---

[2] By the jury trial date, Timm had been promoted to Captain.

[3] The transcript of the November 14, 2022 motion hearing incorrectly spells Officer Karleski's name as Mitchel Carleski.

[4] The hearing continued over three days. The Honorable Laura F. Lau presided over days one and two of the hearing and the Honorable Paul F. Reilly presided over the third day and denied Roth's motion to dismiss. The Honorable Frederick J. Strampe entered the judgment of conviction and sentenced Roth.

camera system, and on the day of the incident, his body camera "was not functioning properly and didn't record any of the incident." Timm believed his squad camera did record the incident and that the footage would have uploaded but may have been deleted due to the Oconomowoc Police Department's (PD) 120-day retention policy. He testified that the uploading of the data from both the squad and body cameras occurs automatically when either comes within a certain distance of the police department.

¶4 Resch testified that his body camera did not record the encounter with Roth. And, while he specifically noted in his report that his squad camera footage had begun uploading at the time of writing, he also testified he never verified whether the uploading was ultimately successful or if video from the incident existed. Resch further testified that he did not have access to delete or modify the videos from the department's server. Similar to Timm, Resch agreed that the department had been having problems with the camera system and that this "was not an isolated incident in relation to body and squad cam[era]s either malfunctioning or not working."

¶5 Karleski was the last to testify. When asked, "Do you have any reason to think that your body-worn camera or squad camera wasn't functioning or didn't upload that day," he answered, "I have great reason to believe that it didn't record or upload or any of that, because that equipment [had] several bugs and issues with it … since day one."

¶6 The circuit court stated that it was "very, very clear to the [c]ourt in this case that there was no ill motive on the part of the Oconomowoc PD," finding credible the officers' testimony that the camera system used by the Oconomowoc PD had significant problems, including on the night of Roth's arrest. The court

found credible the officers' testimony indicating that when the squads enter the police station, the footage from the squad and body cameras is automatically uploaded through a system "that the officers cannot control," which the court determined to be "a reasonable system to take away the control from the individual officer." The court stated that

> [i]t appears extremely evident to this [c]ourt that on April 1st of 2019, the uploading process wasn't working, and that's not the fault or the animus of any one of the officers involved in this matter or the department as a whole. It simply is an indication that the equipment they had was not working properly, and it did not work on this evening.[5]

The court stated that it "f[ound] absolutely no evidence of bad faith of failing to preserve evidence that was potentially exculpatory. It is just as evident that this could've [been] inculpatory evidence of videos in terms of what was happening on the morning of April 1, 2019." The court denied Roth's motion to dismiss.[6]

¶7 The matter went to trial and Roth was convicted of two of the five charged offenses, and he was subsequently sentenced. He now appeals.

---

[5] The circuit court had earlier concluded that "there *may* have been two squad cam[era] videos that did survive but then were destroyed by the retention policy." (Emphasis added.) Whether the footage from the squad cameras was uploaded and later destroyed by the retention policy or was never uploaded in the first place is of no matter. Under either scenario, the court's conclusions that it was "not the fault or the animus of any one of the officers involved" or a result of bad faith are supported by the evidence at the hearing.

[6] Of note, at trial, Roth called as a witness Ivan Lam, information technology coordinator for the City of Oconomowoc. Lam was the custodian of all squad car and body camera footage for the department. In his testimony, Lam agreed that "officers don't have any control in allowing a video to upload from their body or squad camera" and do not have the ability to prevent video from being uploaded stating, "It does it automatically." Lam further testified that officers do not have access to the server to delete body or squad camera videos, and that he was the only one with such access. Lam confirmed that he did not delete files from the April 1, 2019 incident, nor did any officers contact him and ask him to delete such items.

## *Discussion*

¶8    Roth insists the Oconomowoc PD's "failure to preserve [the squad and body camera] evidence violated [his] due process rights and the remedy should be to dismiss this action." The parties agree that for Roth to establish that a failure to preserve evidence violated his due process rights, he must show that the department "(1) failed to preserve evidence that was apparently exculpatory, or (2) acted in bad faith by failing to preserve evidence that was potentially exculpatory." *State v. Luedtke*, 2015 WI 42, ¶7, 362 Wis. 2d 1, 863 N.W.2d 592; *State v. Greenwold* (*Greenwold II*), 189 Wis. 2d 59, 67-68, 525 N.W.2d 294 (Ct. App. 1994). Whether Roth's due process rights were violated is a question of law we review de novo, but the circuit court's findings of fact will not be disturbed unless clearly erroneous. *Luedtke*, 362 Wis. 2d 1, ¶37.

¶9    At times, Roth appears to suggest that the unpreserved evidence is "apparently exculpatory" evidence, and at other times, he appears to suggest it is only "potentially exculpatory." In either case, he fails to sufficiently develop an argument as to how the circuit court erred or to show a due process violation in relation to either apparently or potentially exculpatory evidence. Instead of developing a legal argument, he essentially asserts in conclusory fashion that because the police failed to preserve evidence, his due process rights were automatically violated and the case should be dismissed.

¶10    As to potentially exculpatory evidence, Roth states:

> The incident was clearly a "use of force" incident and required *extra action to preserve available evidence*. This case involved the use of a Taser against Roth and an additional vehicle transport of Roth to the Waukesha County Jail. All this potentially exculpatory evidence was lost and unavailable to Roth and his defense against the charges in this case.

(Emphasis added.) Roth never explains why "extra action" was required in this case and provides no legal support for this contention. He never suggests why, if at all, the use of "an additional vehicle transport" to the jail is relevant to his position. And, he at no time attempts to show that any failure by the government to preserve evidence was done "in bad faith"—a necessary showing for any sanction based on potentially exculpatory evidence.[7] *See Greenwold II*, 189 Wis. 2d at 67. Any contention that his due process rights were violated because the department failed to preserve potentially exculpatory evidence dies on a vine right there.

¶11    With respect to "apparently exculpatory" evidence, Roth states the department "did not attempt to preserve the squad videos or body camera video, and they were unavailable to Roth." He further asserts:

> [T]he only witnesses to the events were Roth and the antagonist police officers, who had the motivation to protect their image under the circumstances of the arrest. Roth had requested the evidence, and the evidence was Roth's only hope for exoneration. "Simply put, there is no replacement for a live recording of the [action involving the arrest of Roth]." [*State v. Huggett*, 2010 WI App 69, ¶23, 324 Wis. 2d 786, 783 N.W.2d 675].

---

[7] We have stated that it is the defendant's burden to prove bad faith, which "can only be shown if: (1) the officers were aware of the potentially exculpatory value or usefulness of the evidence they failed to preserve; *and* (2) the officers acted with official animus or made a conscious effort to suppress exculpatory evidence." *State v. Greenwold* (*Greenwold II*), 189 Wis. 2d 59, 69, 525 N.W.2d 294 (Ct. App. 1994). Again, Roth has made no effort to show that the officers here acted in bad faith. Perhaps this is because after the three officers testified at the motion hearing in this case, the circuit court found, as noted, that it was "very, very clear to the [c]ourt … that there was no ill motive on the part of the Oconomowoc PD," finding credible the officers' testimony that the camera system used by the Oconomowoc PD had significant problems, including on the night of Roth's arrest, and in fact had failed to upload the footage that night through no fault of the officers. Again, the court further stated, "I find absolutely no evidence of bad faith of failing to preserve evidence that was potentially exculpatory."

Roth's insufficiently developed argument related to apparently exculpatory evidence goes nowhere.

¶12     In *State v. Munford*, 2010 WI App 168, 330 Wis. 2d 575, 794 N.W.2d 264, we explained:

> In order to establish that the State violated his due process rights by destroying apparently exculpatory evidence, … Munford must demonstrate that: (1) the evidence destroyed "possess[ed] an exculpatory value that was apparent to those who had custody of the evidence ... before the evidence was destroyed," and (2) the evidence is "of such a nature that the defendant [is] unable to obtain comparable evidence by other reasonably available means."

*Id.*, ¶21 (alterations in original).  But Roth failed to show to the circuit court—and fails to show to us—how the footage contained apparently exculpatory evidence—i.e., "possess[ed] … exculpatory value."  Although Roth claims that "the evidence was [his] only hope for exoneration," he completely fails to explain why the evidence was likely to have exonerated him.

¶13     In *Huggett*, a case to which Roth directs us, the evidence police had failed to preserve—voicemail messages left by the deceased, alleged-aggressor victim that had been lost while the defendant's and his girlfriend's cell phones were in police custody—would have bolstered Huggett's defense theory of self-defense and defense of others.  *Huggett*, 324 Wis. 2d 786, ¶¶23-24.  Importantly, the defendant presented evidence indicating that messages left by the deceased victim on defendant's and his girlfriend's cell phones were "described as 'angry and yelling,' and 'a lot of yelling, and screaming, and very threatening tone.'"  *Id.*, ¶23.  We noted that "[t]he sheriff's department was immediately aware of the apparently exculpatory value of the evidence and confiscated the cell phones as part of its investigation."  *Id.*, ¶17.  We added,

> Simply put, there is no replacement for a live recording of the threats screamed at Huggett shortly before [the deceased victim] broke down the door to Huggett's home. The messages would be central to the jury's application of the self-defense and defense of others standard, which requires that Huggett subjectively believed it was necessary to use deadly force against [the deceased victim] to prevent imminent death or great bodily harm to himself or the home's other occupants, and that his belief was objectively reasonable under the circumstances.
>
> Similarly, the text messages [containing similar threats], by their very nature, could not convey [the deceased's] tone. Further, they likely would not carry the same weight as a "live" threat. It is one thing to type a nasty text message or email and press send; it is quite another to call a person to convey threats directly.

*Id.*, ¶¶23-24.

¶14 Neither Roth nor anyone else provided testimony or other evidence at the motion hearing to indicate how the footage, had it been preserved, could have helped Roth. After listening to all of the motion hearing testimony, the circuit court found that "[i]t is just as evident that this could've [been] inculpatory evidence of videos in terms of what was happening on the morning of April 1, 2019."

¶15 Quoting from *Huggett*, *id.*, ¶23, Roth writes, "Simply put, there is no replacement for a live recording of the [action involving the arrest of Roth]." Significantly, however, Roth misses that in *Huggett* there was substantial and specific evidence indicating why the voicemail messages would be valuable to Huggett's defense—the threatening nature of the voicemail messages left by the deceased victim shortly before he broke into Huggett's home. Again, Roth directs us to no such evidence in this case, and we are unable to find any.

¶16 Here, Roth completely failed to demonstrate to the circuit court, and to us, that the squad and body camera footage "possess[ed] an[y] exculpatory value." *See Munford*, 330 Wis. 2d 575, ¶21 (first alteration in original). As the State correctly points out, citing *Munford*, "[t]he 'mere possibility' that the evidence might be exculpatory does not mean the evidence was apparently exculpatory." *See id.*, ¶23.

¶17 Because Roth has failed to show that the circuit court erred in denying his motion, we affirm. *Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 ("[O]n appeal 'it is the burden of the appellant to demonstrate that the [circuit] court erred.'" (Second alteration in original; citation omitted.)).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.